[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 10-15310 & 11-10224
_____

D.C. Docket No. 1:09-cr-00060-JRH-WLB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANTHONY DAVILA,

Defendant - Appellant.
_____

Appeals from the United States District Court
for the Southern District of Georgia
_____

(April 15, 2014)

**On Remand from the Supreme Court of the United States**

Before TJOFLAT, PRYOR, and KRAVITCH, Circuit Judges.

PER CURIAM:

In United States v. Davila, 664 F.3d 1355 (11th Cir. 2011) ("Davila I"), Anthony Davila argued—for the first time on appeal—that a Magistrate Judge's comments during a pre-plea hearing constituted improper judicial participation in plea discussions in violation of Federal Rule of Criminal Procedure 11(c)(1).[1] Davila I, 664 F.3d at 1357–58. Pursuant to circuit precedent mandating automatic vacatur in such a situation, we vacated Davila's conviction and remanded the case to the District Court. Id. at 1359. The Supreme Court granted certiorari and reversed, holding that judicial participation in plea discussions does not in itself demand automatic vacatur. United States v. Davila, ___ U.S. ___, 133 S. Ct. 2139, 2150, 186 L. Ed. 2d 139 (2013) ("Davila II").

The Court vacated our judgment and remanded, directing us to determine, "in light of the full record," whether Davila was prejudiced by the Magistrate Judge's comments, and to consider whether "the extraordinary circumstances [Davila's] case presents should allow his claim to be judged under the harmless-error standard of Rule 52(a) rather than the plain-error standard of Rule 52(b), the rule that ordinarily attends a defendant's failure to object [in the district court] to a Rule 11 violation." Id. We hold that plain-error review applies. Because Davila

---

[1] Federal Rule of Criminal Procedure 11(c)(1) provides, in relevant part, that "[a]n attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions."

has not demonstrated a reasonable probability that, but for the Magistrate Judge's comments, he would have exercised his right to trial, we affirm Davila's conviction.

## I.

In May 2009, a federal grand jury in the Southern District of Georgia indicted Davila on thirty-four counts, charging the following offenses: (1) in count one, conspiracy to defraud the United States in violation of 18 U.S.C. § 286; (2) in counts two through twelve, making and presenting false claims to the Internal Revenue Service in violation of 18 U.S.C. § 287; (3) in counts thirteen through twenty-three, mail fraud in violation of 18 U.S.C. § 1341; and (4) in counts twenty-four through thirty-four, aggravated identity theft in violation of 18 U.S.C. § 1028A.  In brief, the indictment alleged that Davila caused more than 120 false income tax returns in other individuals' names to be filed with the Internal Revenue Service, and that Davila collected more than $423,000 as a result of these returns.

On May 20, 2009, Davila was arrested in Tampa, Florida.  Davila made his initial appearance before a Magistrate Judge in the United States District Court for the Middle District of Florida, represented by appointed counsel Adam B. Allen of the Federal Public Defender's Office.  Davila was detained and then transferred, pursuant to Federal Rule of Criminal Procedure 5(c)(2)–(3), to the Southern

3

District of Georgia, and placed in the McDuffie County Jail in Thomson, Georgia.[2]

Michael N. Loebl of Fulcher Hagler, LLP was appointed to represent him.

At his arraignment before a Magistrate Judge on June 1, 2009, Davila pled

not guilty to all charges. Then, at a detention hearing on June 9, 2009, the

Magistrate Judge denied Davila bond, noting that Davila was "the poster child for

detention." Record, no. 50, at 73:1. The Augusta Chronicle reported that, after the

hearing, the Magistrate Judge spoke with the press, telling the Chronicle that the

reasons to detain Davila were "extensive." Record, no. 41, at 4 (quoting Sandy

Hodson, Judge denies bond in prison identity theft scam, Augusta Chron., June 10,

2009, http://chronicle.augusta.com/stories/2009/06/10/met_527113.shtml). The

Chronicle also noted that the Magistrate Judge had dubbed Davila "the poster child

for detention." Id. (quoting Hodson, supra).

At some point—the record is unclear as to precisely when—Loebl received a

Pretrial Services Report prepared prior to Davila's transfer to the Southern District

---

[2] Under Federal Rule of Criminal Procedure 5(c)(2), "[i]f the defendant was arrested in a district other than where the offense was allegedly committed, the initial appearance must be: (A) in the district of arrest; or (B) in an adjacent district if: (i) the appearance can occur more promptly there; or (ii) the offense was allegedly committed there and the initial appearance will occur on the day of arrest." Then, "the magistrate judge must transfer the defendant to the district where the offense was allegedly committed if: (i) the government produces the warrant, a certified copy of the warrant, or a reliable electronic form of either; and (ii) the judge finds that the defendant is the same person named in the indictment, information, or warrant." Fed. R. Crim. P. 5(c)(3)(D).

of Georgia.  The Report indicated that Davila had been treated in the past for schizophrenia.  Then, on July 7, 2009, Loebl received a proposed plea agreement from the Government and forwarded it to Davila at the jail.  Under the terms of the agreement, Davila would plead guilty to sixteen of the thirty-four counts.  On August 13, 2009, Loebl met with Davila but discussed the plea offer only in "general terms" and did not discuss the proposed "plea agreement or all of its terms and their consequences in detail."  Record, no. 35, at 1–2.  On August 21, 2009, Loebl again met with Davila.  At the outset of the meeting, Davila informed Loebl that the dosage of his antipsychotic medication had recently been significantly increased.  Davila provided Loebl with a copy of the plea agreement Loebl had sent him, which Davila had signed, but not dated.[3]  However, Davila "stated in no uncertain terms that he was not capable of reviewing it or comprehending any explanation of it at that time."  Id. at 2.

That same day, on August 21, 2009, Loebl moved the District Court to enter an order requiring Davila to submit to a competency evaluation.  In his motion, Loebl explained that he had a plea agreement executed by Davila.  However, Loebl indicated that he had "weighty concerns" about the circumstances under which the

---

[3] The record is somewhat unclear as to when, precisely, Davila provided Loebl with the signed plea agreement, but it appears that it was at their meeting on August 21, 2009.  See Record, no. 35, at 2.

5

agreement had been executed, due to Davila's apparent mental condition and because Loebl had been unable to review the agreement "provision-by-provision, page-by-page" with Davila. Id. Thus, Loebl submitted, while the District Court could conceivably "evaluate . . . Davila's mental competency as a threshold matter in any change-of-plea hearing, . . . the integrity of the judicial system would be best served by a competency evaluation prior to any further proceedings." Id. The Government responded the same day, offering no objection.

On September 1, 2009, the District Court ordered an examination as to Davila's competency to stand trial[4] and as to his mental state at the time of the alleged offenses. Davila was transported for evaluation to the Federal Correctional Institute in Fort Worth, Texas. On January 11, 2010, a psychiatric report issued, indicating that Davila suffered from schizoaffective disorder, which was controlled by medication, and that he was competent to stand trial. The report noted that Davila "was aware of the concept of a plea agreement, [but] . . . was somewhat insistent that he would not consider a plea offer," as he stated during his evaluation that he did not commit the charged crimes and "want[ed] [his] day in court."

---

[4] "A defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.'" Cooper v. Oklahoma, 517 U.S. 348, 354, 116 S. Ct. 1373, 1377, 134 L. Ed. 2d 498 (1996) (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam)) (alterations in original).

Record, no. 38, at 8. The report also indicated that Davila was dissatisfied with Loebl because all Loebl "seems to care about is the most effective plea bargain so that he doesn't have to go to trial." Id. at 9. Then, on January 27, 2010, a competency hearing before the Magistrate Judge was set for February 23, 2010.

On the same day, January 27, 2010, and shortly after his return to the Southern District of Georgia, Davila wrote a letter from the McDuffie County Jail to the presiding District Judge, expressing displeasure with Loebl and requesting replacement counsel. In particular, Davila complained that Loebl was allegedly unqualified to try a federal criminal case, that he had failed to adequately consult with Davila, had not forwarded any discovery to him, had not obtained relevant information that would assist in preparation of his case, had not kept him apprised of the preparation of his defense, and had not investigated a certain Government witness. Davila also complained that Loebl offered him no defensive strategy other than to plead guilty, and—as we construe Davila's letter—had raised the question of Davila's competence despite Davila's apparent unwillingness to do so. Concluding the letter, Davila requested a hearing and, ultimately, removal of Loebl from the case and appointment of replacement counsel. The District Judge referred the letter to the Magistrate Judge.

On February 8, 2010, while the competency hearing was pending, the Magistrate Judge conducted an in camera hearing with Davila and Loebl to address

7

Davila's complaints.  Government counsel was excused.  The Magistrate Judge began by explaining to Davila that Loebl was well-qualified to try Davila's case, and that furthermore, the Magistrate Judge felt that Davila was "lucky" to have drawn Loebl from the pool because Loebl had previously served very competently as the Magistrate Judge's law clerk, noting that Loebl was "one of the finest law clerks [he] had ever had."  Record, no. 127, at 3:25–4:11.  The Magistrate Judge then explained that Davila was free to represent himself, but that the court would not appoint another attorney.

At this point, Davila presented a pro se motion to recuse the Magistrate Judge, based on the statements the Magistrate Judge had made to the press after the June 9, 2009, detention hearing that put forth Davila as the "poster child for detention."  Record, no. 41, at 1.  In his pro se motion, Davila alleged that these statements demonstrated the Magistrate Judge's bias.  The Magistrate Judge denied the motion without comment.

With regard to Davila's mental condition, the Magistrate Judge told Davila, "[t]he question about this schizoaffective disorder . . . is this, you are an articulate great writer.  You put together some very . . . precise arguments about various things which indicates to me that you are not incompetent.  Clearly you are competent."  Record, no. 127, at 7:17–21.

Turning to Davila's complaint that Loebl had presented him with no defensive strategy other than to advise him to plead guilty, the Magistrate Judge told Davila:

> Well, you know, oftentimes, Mr. Davila, that is the best advice a lawyer can give his client.  In view of whatever the Government's evidence in a case might be, it might be a good idea for the Defendant to accept responsibility for his criminal conduct to plead guilty and go to sentencing with the best arguments on your behalf still available for not wasting the Court's time, not causing the Government to have to spend a bunch of money empanelling a jury to try an open and shut case.

Id. at 8:17–25.

Davila expressed concern that Loebl (according to Davila) continued to recommend a plea of guilty notwithstanding the Government's refusal to commit to recommending a downward departure from the Guidelines sentence range based on Davila's cooperation.[5]  Davila reiterated that Loebl should have given him "options" and that not one letter he had received from Loebl "talked[ed] about a viable defense at all except for pleading guilty."  Id. at 10:11–13, 11:19–22.

The Magistrate Judge responded that "there may not be a viable defense to these charges."  Id. at 11:23–24.  The Magistrate Judge then urged Davila to

---

[5] Under § 5K1.1 of the U.S. Sentencing Guidelines Manual, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense," the district court may grant a downward departure from the Guidelines sentence.

9

cooperate, intimating that, given Davila's criminal history, it would be in his best interest to plead guilty in order to obtain a downward departure from the sentence range indicated by the Sentencing Guidelines. The Magistrate Judge explained to Davila:

> [T]he Government, they have all of the marbles in this situation and they can file that [U.S. Guidelines Sentencing Manual §] 5K1.1 motion for [a] downward departure from the guidelines if they want to, you know, and the rules are constructed so that nobody can force them to file that 5K1.1 [motion] for you. The only thing at your disposal that is entirely up to you is the two or three level reduction for acceptance of responsibility. That means you've got to go to the cross. You've got to tell the probation officer everything you did in this case regardless of how bad it makes you appear to be because that is the way you get that three-level reduction for acceptance, and believe me, Mr. Davila, someone with your criminal history needs a three-level reduction for acceptance. . . . You're the only person that has that key, but make no mistake about it, that two- or three-level reduction for acceptance is something that you have the key to and you can ensure that you get that reduction in sentence simply by virtue of being forthcoming and not trying to make yourself look like you really didn't know what was going on. In order to get the reduction for acceptance, you've got to come to the cross. You've got to go there and you've got to tell it all, Brother, and convince that probation officer that you are being as open and honest with him as you can possibly be because then he will go to the district judge and he will say, you know, that Davila guy, he's got a long criminal history but when we were in there talking about this case he gave it all up so give him the two-level, give him the three-level reduction.

Id. at 15:23–17:13. Neither Davila nor Loebl objected to the Magistrate Judge's urgings.

10

On February 23, 2010, the Magistrate Judge conducted the previously scheduled competency hearing. At the hearing, the psychologist that had examined Davila at the Federal Correctional Institute testified that the symptoms of Davila's schizoaffective disorder were adequately controlled by his medication. The psychologist further testified that Davila appeared unwilling to assist Loebl, but that this was caused by his dissatisfaction with Loebl, and not by his mental illness. The Magistrate Judge then questioned Davila under oath, who explained that a recent change in the dosage of his medication "threw [him] off of whack," but that so long as his medication is administered correctly in the future, "there is no problem of competency." Record, no. 128, at 50:16–51:24.

On March 4, 2010, the Magistrate Judge issued a report and recommendation that Davila be found competent. The following day, on March 5, Loebl demanded a speedy trial. Then, on March 23, 2010, the District Court issued an order finding Davila competent to stand trial. On March 25, the court set a trial date for April 19, 2010. On March 29, the Government moved to continue the trial, noting in the motion that plea discussions were ongoing. On April 2, the court granted the motion for continuance.

On May 17, 2010, Davila entered a guilty plea before the District Judge, pursuant to a plea agreement under which Davila would plead to the count one conspiracy charge in exchange for the Government's agreement to dismiss the

11

remaining thirty-three counts and recommendation of a three-level Sentencing Guidelines reduction for acceptance of responsibility.  At the change-of-plea hearing, the court conducted an "exemplary Rule 11 colloquy."  <u>Davila II</u>, 133 S. Ct. at 2142.  Under oath, Davila stated that he had not been forced or pressured to plead guilty.  Davila also admitted that his conduct would satisfy the elements of conspiracy, notwithstanding some purported "inaccuracies" Davila pointed to in the "details" of the indictment.  Record, no. 121, at 15:10-19:9.  The District Court then accepted Davila's plea.  Nothing in the record indicates that, at the time of the hearing, the District Judge was aware of the February 8, 2010, hearing before the Magistrate Judge or of his comments regarding the desirability of a guilty plea, and neither Loebl nor Davila mentioned those comments.

Following his plea, Davila continued to express to the court his dissatisfaction with Loebl.  On July 27, 2010, Davila filed a motion to terminate counsel; he would represent himself.   At an <u>ex parte</u> hearing on August 3, 2010, before the Magistrate Judge to address the motion, Davila expressed discontent with the guilty plea's factual basis, and, specifically, the commencement date of the conspiracy alleged in the indictment.  Davila complained that Loebl had not properly addressed the matter prior to the plea change hearing.  The Magistrate Judge announced that he was continuing the <u>ex parte</u> hearing until the Presentence Investigation Report (the "PSI") had been completed.

12

After the Magistrate Judge and the parties received the initial draft of the PSI, the Magistrate Judge reconvened the ex parte hearing on September 13, 2010. The Magistrate Judge placed Davila under oath and asked him a series of questions in order to ensure that Davila's waiver of counsel was knowing and intelligent. See generally Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975) (holding that a criminal defendant has the right to self-representation, but "must 'knowingly and intelligently' forgo" the benefits of counsel). The Magistrate Judge found that Davila had knowingly waived his right to counsel, but, over Davila's objection, required Loebl to serve as standby counsel. See generally id. at 834 n.46, 95 S. Ct. at 2541 n.46 ("[A] State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary."). On September 14, 2010, the Magistrate Judge issued an ex parte order holding Davila's waiver of counsel valid, granting Davila's motion to terminate Loebl, and appointing Loebl as standby counsel.

On September 15, 2010, Davila filed a pro se motion to vacate his guilty plea and dismiss the indictment. Davila contended that a Government witness had deliberately misrepresented the time frame of the conspiracy to the grand jury. Davila claimed that the purpose of his plea was "strategic." Record, no. 79, at 35.

13

The Government filed a response on September 22, 2010, arguing that Davila's guilty plea waived all factual disputes. Davila then filed a reply to the Government's response on September 28, 2010, an objection to the PSI on October 14, 2010, an addendum to his pro se motion to vacate his guilty plea and dismiss the indictment on October 26, 2010, and a motion for a hearing on November 2, 2010.

On November 15, 2010, the District Court conducted a hearing on Davila's pro se motion to vacate his guilty plea and dismiss the indictment.[6] At the hearing, Davila explained his "strategic decision" to plead guilty: because he was aware that the prosecutor had a duty to disclose all information relevant to the court's decision whether to accept the plea, Davila's purported purpose in entering the plea was to force the Government to acknowledge time frame errors made in the indictment and that the basis for the guilty plea was thus flawed, and thereby demonstrate to the court that the prosecution was "vindictive." Record, no. 122, at 5:7–6:9. Davila also indicated that he felt he "had no choice" but to plead. Id. at 7:25–8:1.

---

[6] Loebl was present at the hearing, but assisted—at Davila's request—only with the sentencing portion.

14

Again, neither Loebl, Davila, nor the court mentioned the Magistrate Judge's comments regarding the desirability of a guilty plea. The court observed that, at the change-of-plea hearing, Davila had affirmed that he was under no "pressure, threats, or promises, other than the promises [made] by the government in the plea agreement." Id. at 17:19–21. The court further noted that Davila had been fully advised of his rights and the consequences of his plea. Thus, the court held that Davila's plea was knowing and voluntary, and denied Davila's motion. The court then sentenced Davila to a prison term of 115 months.

Davila promptly appealed his conviction and sentence, which led to our decision in Davila I, 664 F.3d 1355. On November 15, 2010, before we had appointed Loebl as Davila's appellate counsel, Davila filed a motion with the District Court to appoint substitute counsel on appeal. On November 29, 2010, we appointed Loebl to represent Davila on appeal. Then, on November 30, 2010, Loebl filed a motion with the District Court to withdraw as counsel. The District Court denied both Davila's motion to appoint substitute appellate counsel and Loebl's motion to withdraw. On December 17, 2010, Davila filed a motion for reconsideration of the District Court's orders, which the Court denied.

15

On March 22, 2011, Loebl sought our leave to withdraw, supported by an

Anders brief asserting that there were no issues of arguable merit to be raised on

Davila's behalf.[7]  In a perfunctory order, we denied Loebl's motion to withdraw.

In response to our order, Loebl filed a brief arguing that Davila's plea should

be vacated because the Magistrate Judge's comments regarding the desirability of a

guilty plea during the hearing on February 8, 2010, constituted a violation of

Federal Rule of Criminal Procedure 11(c)(1).  Pursuant to circuit precedent

mandating automatic vacatur in case of judicial participation in plea negotiations,

we vacated Davila's plea and conviction, and remanded the case to the District

Court.  Davila I, 664 F.3d at 1358–59.[8]

---

[7]If an attorney finds, after a "conscientious examination" of the record on appeal, that his or her case is "wholly frivolous," he or she may request permission to withdraw.  Anders v. State of California, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400, 18 L. Ed. 2d 493 (1967).  "That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal."  Id.  This brief is referred to as an Anders brief.  If, after a plenary review of the record, the court determines that the case is wholly frivolous, "it may grant counsel's request to withdraw and dismiss the appeal."  Id.  "On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford [an] indigent the assistance of counsel to argue the appeal."  Id.

[8] Under our now-abrogated automatic vacatur rule, we treated Rule 11(c)(1) as a "bright line rule," holding that:

> Rule 11(c)(1) . . . prohibits "the participation of the judge in plea negotiations under any circumstances . . . [and] admits of no exceptions."  United States v. Johnson, 89 F.3d 778, 783 (11th Cir. 1996) (quotation omitted).  Thus, "[j]udicial participation is plain error, and the defendant need not show actual prejudice."  United States v. Corbitt, 996 F.2d 1132, 1135 (11th Cir. 1993).

Davila I, 664 F.3d at 1358 (emphasis omitted).

16

The Supreme Court granted certiorari, held that our automatic vacatur rule is incompatible with Federal Rule of Criminal Procedure 11(h),[9] vacated our judgment, and remanded, directing us to consider, "in light of the full record," whether Davila was prejudiced by the Magistrate Judge's comments, and whether "the extraordinary circumstances [Davila's] case presents should allow his claim to be judged under the harmless-error standard of Rule 52(a) rather than the plain-error standard of Rule 52(b), the rule that ordinarily attends a defendant's failure to object [in the district court] to a Rule 11 violation."  Davila II, 133 S. Ct. at 2149–50.  Following the Court's mandate, we asked the parties for new briefs in light of the Court's decision.

Davila now argues that, because he had no meaningful opportunity to make a contemporaneous objection due to the circumstances of his case, harmless-error review should apply, and that the Government has failed, under that standard, to show that he was not prejudiced by the Rule 11 error.  Davila further argues that even if plain-error review applies, the record demonstrates that it is reasonably probable that he would not have changed his plea to guilty but for the Magistrate

---

[9] Federal Rule of Criminal Procedure 11(h) provides that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights."  The Supreme Court noted that Rule 11(h) was "specifically designed to stop automatic vacaturs, [and] calls for across-the-board application of the harmless-error prescription (or, absent prompt objection, the plain-error rule)."  Davila II, 133 S. Ct. at 2149.

Judge's comments regarding the desirability of pleading, thus demonstrating that Davila suffered prejudice.  Therefore, under either standard, Davila contends that his conviction and plea must be vacated.

The Government argues that plain-error review applies because Davila abandoned any argument for harmless-error review, and that plain-error review is required regardless because the contemporaneous objection rule is applicable even where, as here, counsel may be unmotivated to object—and in any case Davila had an opportunity to personally object during the months he represented himself pro se.  The Government further argues that, under plain-error review, Davila failed to show that he was prejudiced by the Rule 11 error, as demonstrated by portions of the record which purportedly indicate that the Magistrate Judge's comments had no effect on Davila's decision to plead guilty.   Thus, the Government contends, we must affirm Davila's conviction.

## II.

Federal Rule of Criminal Procedure 11 provides that a defendant and the Government may discuss and reach a plea agreement and that a district court may accept or reject such an agreement.  Fed. R. Crim. P. 11(c)(1), (3).  However, judicial participation in plea discussions is prohibited.  Fed. R. Crim. P. 11(c)(1).  In Davila II, the Supreme Court abrogated our rule of automatic vacatur in case of such judicial participation.  133 S. Ct. at 2149–50.  Thus, we must review the

18

effect of the Magistrate Judge's participation in the parties' plea discussions here under the provisions of the Federal Rules of Criminal Procedure which govern trial error: Rule 52(a) and Rule 52(b). See id. at 2147 ("Rule 11 error may be of the Rule 52(a) type, or it may be of the Rule 52(b) kind, depending on when the error was raised.").

Under Federal Rule of Criminal Procedure 52(a), known as the "harmless-error rule," "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Rule 52(a) controls when an objection to trial court error was timely raised in the district court, allowing the Government to "avoid[] reversal of a criminal conviction by showing that trial error, albeit raised by a timely objection, affected no substantial right of the defendant and was thus harmless." United States v. Vonn, 535 U.S. 55, 58, 122 S. Ct. 1043, 1046, 152 L. Ed. 2d 90 (2002). Thus, under Rule 52(a), the Government has the burden to show lack of prejudice.

Under Federal Rule of Criminal Procedure 52(b), known as the "plain-error rule," "plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Rule 52(b) controls when a defendant fails to timely object to trial court error, allowing the defendant to "nonetheless obtain reversal of a conviction by . . . showing among other things that plain error

19

did affect his substantial rights." Vonn, 535 U.S. at 58, 122 S. Ct. at 1046. Thus, under Rule 52(b), the defendant has the burden to show prejudice.

Here, Davila argues—for the first time on appeal—that the Magistrate Judge violated Rule 11(c)(1) by improperly participating in plea discussions. Thus, Davila would normally bear the burden under Rule 52(b) plain-error review of demonstrating that the error affected his substantial rights in order to obtain vacatur of his conviction and plea. However, Davila contends that, given the circumstances of his case—in which the Magistrate Judge's remarks were made during a hearing convened to address Davila's complaints regarding his appointed counsel, and essentially amplified counsel's advice to him—he had no meaningful opportunity to make a contemporaneous objection, and therefore it would be unrealistic to demand an objection and unreasonable to penalize him for failing to have made one. Thus, Davila argues, Rule 52(a) harmless-error review should apply.[10]

---

[10] The Government contends that Davila abandoned the argument that harmless-error review applies because he did not make the argument in his opening brief on appeal. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("A party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue . . . will be considered abandoned."). This position ignores the practical reality that Davila could not have been expected to make this argument in his opening brief because this circuit's now-abrogated automatic vacatur rule rendered such an argument irrelevant. Moreover, the purpose of the waiver rule would not be served by applying it in the manner the Government proposes. An appellant must "state and address argument to the issues the appellant desires to have reviewed by this Court in the appellant's initial brief because '[i]n preparing briefs and arguments, an

20

We recognize that it may be inappropriate in certain circumstances to penalize a defendant for failing to object to judicial participation in plea negotiations.  Several of our sister circuits have noted in dicta that where defense counsel's objection may not be forthcoming because, for example, counsel might appreciate the court's "help" in convincing his or her client to plead guilty, or where counsel's objection would otherwise be unlikely or futile, it is potentially unfair to subject the defendant to plain-error review.[11]  See, e.g., United States v. Kyle, 734 F.3d 956, 962 (9th Cir. 2013); United States v. Cano-Varela, 497 F.3d 1122, 1132 (10th Cir. 2007); United States v. Baker, 489 F.3d 366, 372 (D.C. Cir. 2007).

We find, however, that Davila's case does not warrant departure from the rule that plain-error review applies when a defendant fails to contemporaneously

---

appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed.'" Fed. Sav. & Loan Ins. Corp. v. Haralson, 813 F.2d 370, 373 n.3 (11th Cir. 1987) (quoting Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983)).  Here, the Government received adequate notice of the argument that harmless-error review applies and was given an opportunity to prepare a supplemental brief in response.  Thus, the argument was not abandoned.

[11] These courts have held, however, that because the defendants in those cases were able to satisfy the plain-error standard, it was unnecessary to determine whether harmless-error review should apply and, assuming arguendo that plain-error was the proper standard, vacated the defendants' convictions. See United States v. Kyle, 734 F.3d 956, 962–63 (9th Cir. 2013); United States v. Cano-Varela, 497 F.3d 1122, 1132 (10th Cir. 2007); United States v. Baker, 489 F.3d 366, 373 (D.C. Cir. 2007).

object to trial error.  We note that we have applied the contemporaneous objection rule even in situations where counsel may not desire to object.  See United States v. Rodriguez, 627 F.3d 1372, 1380 (11th Cir. 2010) (rejecting a "vindictive judge or cowardly counsel exception to the contemporaneous objection rule" in a case where defense counsel did not object to a district judge's comments at sentencing, when an objection might have implied that counsel thought the judge was biased).

Moreover, even assuming arguendo that for an error to fall under Rule 52(b), there must have been a "meaningful" opportunity to contemporaneously object, and that Loebl's silence deprived Davila of one such opportunity, Davila had ample occasion to object himself in the months following the Magistrate Judge's comments, and during the time following his plea during which he represented himself.  The record contains no indication that Davila did so, even informally.  Thus, because we do not excuse Davila's failure to object, we review his case for plain error.  Cf. United States v. Castro, 736 F.3d 1308, 1313 (11th Cir. 2013) (per curiam) (reviewing a Rule 11(c)(1) violation for plain error where the defendant failed to object to the district court's improper comments via any of the attorneys that represented him, or in his pro se motion to withdraw his plea).

### III.

To obtain reversal under Rule 52(b) plain-error review, a defendant must show that:

22

there is: "(1) error, (2) that is plain, and (3) that affects substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."

United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (quoting United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 860 (2002)).

With regard to a Rule 11 violation specifically, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea."  United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340, 159 L. Ed. 2d 157 (2004).   To meet this standard, Davila need not "prove by a preponderance of the evidence that but for [the] error things would have been different."  Id. at 83 n.9, 124 S. Ct. at 2341 n.9.  Rather, he "must . . . satisfy the judgment of the reviewing court . . . that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding."  Id. at 83, 124 S. Ct. at 2341 (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984)).  In making this determination, we must assess the Magistrate Judge's comments "not in isolation, but in light of the full record."  Davila II, 133 S. Ct. at 2150.

23

Nevertheless, the burden Davila faces in obtaining vacatur of his plea under plain-error review is a "daunting obstacle" that is "anything but easy to satisfy." See Castro, 736 F.3d at 1314 (citations and quotations omitted).  Davila "must prove that the error made a difference in his decision.  If the record establishes that it is as likely that the error had no effect on [his] decision, he cannot prevail."  See id.

It is undisputed that the Magistrate Judge's remarks encouraging Davila to plead guilty during the February 8, 2010, hearing constitute error, and that the error was plain.  Thus, the issue becomes one of causation: whether the error affected Davila's substantial rights.  In other words, in light of the full record, has Davila demonstrated that it is it reasonably probable that, but for the Magistrate Judge's remarks, he would have gone to trial?

We find that Davila has not met this burden.  Although Davila has adduced some evidence in his favor—most significantly, his apparent reluctance to plead prior to the hearing at which the Magistrate Judge made the improper remarks—in light of the full record, we are not convinced that it is reasonably probable that the Magistrate Judge's comments precipitated Davila's plea.

In reaching this conclusion, we are guided by our recent decision in United States v. Castro, a case in which we denied relief to a defendant under circumstances that arguably presented "a closer question on prejudice" than those

24

here.  See Castro, 736 F.3d at 1317 (Martin, J., concurring in the result only).  In Castro, the defendant, Castro, initially pled not guilty to several drug- and firearm-related charges, but later negotiated and signed a plea agreement.  Id. at 1310 (majority opinion).  During the subsequent change-of-plea hearing, Castro told the district court that he was on medication which affected his ability to reason.  Id. Castro's counsel told the court that this was the first he'd heard of this issue, and requested a delay so that he could make certain that Castro was able to comprehend the agreement.  Id.  The court continued the hearing for two weeks. Id.

Three days before the change-of-plea hearing resumed, Castro signed another plea agreement.  Id.  On the morning his hearing was to resume, Castro told his attorney that he did not wish to plead, but nevertheless went ahead with the hearing.  Id.  At the hearing, Castro told the district court that he did not want to plead, was dissatisfied with his attorney's representation, and wanted the court to appoint him new counsel.  Id.

The court asked Castro if he understood that "if you don't plead today[,] [the Government] may charge you with other things that will make your sentence even more severe."  Id. at 1311.  Castro then indicated that he wished to plead.  Id.  As directed by the district court, Castro signed another copy of the plea agreement, which stated he had not been pressured to plead.  Id.  Castro also indicated during

25

the subsequent plea colloquy that his plea had not been coerced, and acknowledged that the government could prove the facts proffered in his plea agreement. Id. The court accepted Castro's plea. Id. at 1312.

Castro hired a new attorney to represent him at sentencing. Id. After he was sentenced, Castro moved pro se to withdraw his plea and to dismiss his new attorney. Id. The district court denied his motion. Id. Castro then hired another attorney, who filed a motion for reconsideration. Id. Neither motion mentioned the court's comments. Id. Rather, Castro claimed that he had changed his plea due to his attorney's urgings, and that his plea was unknowing and involuntary because he purportedly suffered from various illnesses and took medication that interfered with his ability to think rationally. Id. The district court denied the motion for reconsideration. Id.

Castro appealed, and argued for the first time on appeal that the district court's comments constituted a Rule 11(c)(1) violation. Id. Following our automatic vacatur rule, we vacated his guilty plea. Id. After the Supreme Court in Davila II abrogated our automatic vacatur rule, we sua sponte vacated our earlier opinion and granted rehearing of Castro's appeal, this time applying the plain-error standard articulated above. Id. at 1312–13 (citing Davila II, 133 S. Ct. at 2150).

Even though Castro changed his plea to guilty immediately following the district court's remarks—which would tend to suggest that the remarks precipitated

26

the plea—we found that the timing of Castro's plea was not dispositive.  Id. at 1314.  We pointed to several factors that convinced us that, in light of the whole record, Castro had failed to meet his burden: (1) Castro verified during the plea colloquy and in the plea agreement that no one had forced him to plead guilty, and acknowledged that the government could prove the facts of his conduct; (2) Castro committed to a favorable plea agreement and later moved to withdraw his plea, but in doing so did not mention the court's improper comments, instead putting forth other reasons; and (3) Castro's conduct—his repeated changing of attorneys and apparent malingering—"smack[ed] of gamesmanship."  Id. at 1314–15.  Accordingly, we found that:

> Although it is plausible that Castro decided to plead guilty because of the comments of the district court, it is, at least, equally plausible that Castro pleaded guilty to shorten the duration of his inevitable sentence for crimes that he admittedly committed.  Because "the effect of [the] error on the result in the district court is uncertain or indeterminate . . . [Castro] has [failed to prove] . . . that the result would have been different but for the error; he . . . [was] prejudice[d]; . . . [or] his substantial rights have been affected."

Id. at 1315 (alterations in original) (quoting Rodriguez, 398 F.3d at 1301).  We therefore affirmed Castro's conviction.  Id.

Here, the circumstances are similar.  Like the defendant in Castro, Davila initially pled not guilty and later signed a plea agreement, but subsequently— amidst some outstanding issues regarding his dissatisfaction with his attorney and

his ability to comprehend the agreement—expressed a desire not to plead. Like the judge in Castro, the Magistrate Judge improperly warned Davila what consequences he might face should he choose not to plead. Like the defendant in Castro, Davila subsequently changed his plea.

As in Castro, several factors combine to convince us that it is at least equally plausible that Davila chose to plead "to shorten the duration of his inevitable sentence" as it is that he did so due to the Magistrate Judge's comments. See id. Like the defendant in Castro, Davila (1) swore under oath during his change-of-plea hearing that his plea was not coerced and acknowledged that the Government could prove the conduct underlying his offense; and (2) later moved to withdraw his guilty plea but, in doing so, did not mention the improper comments and instead offered different reasons for doing so. Moreover, several other factors that were not present in Castro cast additional weight against a finding of prejudice here: (3) Davila pled guilty three months after the Rule 11(c)(1) violation occurred, not—like the defendant in Castro—close on its heels; (4) the District Judge who approved Davila's plea agreement and conducted the plea colloquy was not the judge who committed the Rule 11(c)(1) violation—unlike in Castro, where the judge who took the defendant's plea was the same judge who made the improper

28

remarks; and (5) Davila's final plea agreement was significantly more favorable than the agreement the Government initially offered him.[12]

With regard to the first factor—that Davila swore under oath at his change-of-plea hearing that his plea was not coerced and that the Government could prove the conduct underlying the conspiracy count—Davila argues that whatever this may say about the voluntariness of his plea at the time of the change-of-plea hearing, it has no bearing on whether his plea was prompted by the Magistrate Judge's comments. We disagree. Davila's statement that no one pressured him to plead must be taken at face value; to draw inferences to the contrary in Davila's favor is not our task under plain-error review.

Davila also points out that the court's questioning of a defendant regarding whether he or she was pressured to plead may be unlikely to illicit information about pressure from the judiciary itself, either because the defendant may not realize that this is what the court had in mind, or because the defendant may simply be reluctant to accuse the court of misconduct. This may be the case, and indeed, several of our sister circuits have held a defendant was prejudiced by the court's

---

[12] Although the defendant in Castro eventually entered a favorable plea agreement, it is unclear whether this agreement was different from the one the defendant had originally signed, before his change-of-plea hearing was continued. 736 F.3d at 1314. Regardless, the analysis would be similar: that the agreement was favorable provides—in the context of the defendant's other actions—at least some evidence that the defendant arguably chose to plead to take advantage of the agreement, rather than because of pressure from the court.

29

improper participation in plea negotiations despite a plea colloquy during which the defendant stated under oath that his plea was not coerced.  See, e.g., United States v. Pena, 720 F.3d 561, 576–77 (5th Cir. 2013), Baker, 489 F.3d at 375; United States v. Kraus, 137 F.3d 447, 457–58 (7th Cir. 1998).  However, Davila must prove more than that he may not understand the intent of a question or may be reluctant to tell the truth.  A defendant "bears a heavy burden to show" statements he made under oath at a plea colloquy were false.  United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).  Thus, we must follow Castro and hold that this factor weighs against a finding of prejudice.

With regard to the second factor—Davila's failure to mention the Magistrate Judge's comments in his pro se motion to vacate his guilty plea or during the hearing convened to address it—Davila argues that he agreed to plead guilty to the conspiracy count for "strategic" reasons: feeling that the Government, the District Court, and his own counsel were aligned against him, he decided to plead in a "desperate gambit."  Appellant's Supp'l Br. at 15.  Davila hoped that the Government would be forced to acknowledge that the conspiracy count misstated his conduct, and that the District Court "would then reject the plea or take other remedial action."  Id.

As noted, the plea agreement—under which the Government agreed to dismiss the remaining thirty-three counts and to recommend a three-level

Sentencing Guidelines reduction for acceptance of responsibility—was significantly more favorable to Davila than the agreement the Government had originally proposed, under which Davila would have pled guilty to sixteen of the thirty-four counts. Thus, although Davila's explanation is not implausible, it is at least equally likely that Davila decided to plead simply because he had negotiated a better deal. Furthermore, even if we accept that Davila's plea was "strategic," this does not explain Davila's failure to mention the Magistrate Judge's comments in his efforts to vacate the plea. Also, we note that, if true, Davila's gambit to some extent "smacks of gamesmanship." See Castro, 736 F.3d at 1314. Therefore, as in Castro, this factor also weighs against a finding of prejudice.

With regard to the third factor—the three-month delay between the Magistrate Judge's comments and Davila's plea—Davila argues that this delay is consistent with his claim that the Magistrate Judge's comments triggered his plea, because Davila could not immediately negotiate a deal at the time of the comments due to his then-unresolved competency status. However, Davila must prove more than that the record is consistent with his argument; he must "show that the error actually did make a difference." Rodriguez, 398 F.3d at 1300. Although there is no clear maximum period of time following a Rule 11 violation after which it could be said that a guilty plea is necessarily free from taint, cases in which courts found a defendant prejudiced by such a violation generally involve temporary

31

proximity between the violation and the plea. See, e.g., Kyle, 734 F.3d at 966 (finding the defendant was prejudiced where parties reached a plea agreement twelve days after the district court's improper comments); Pena, 720 F.3d at 574 (finding the defendant was prejudiced where defendant pled guilty five days after the district court's improper comments); Baker, 489 F.3d at 369–370 (finding the defendant was prejudiced where defendant's counsel informed that court that the defendant wished to plead guilty one day after the district court's improper comments); United States v. Bradley, 455 F.3d 453, 459 (4th Cir. 2006) (finding the defendant was prejudiced where defendant pled guilty within a week of the district court's improper comments). Thus, the lapse of time in Davila's case weighs against a finding of prejudice. See Castro, 736 F.3 at 1316-17 (Martin, J., concurring in the result only) (explaining that the lapse of time in Davila's case suggests that it is even less likely that Davila was prejudiced than Castro).

With regard to the fourth factor—that the District Judge who took Davila's plea was not the judge who committed the Rule 11(c)(1) violation—Davila contends that from his perspective, the Magistrate Judge—who made the improper comments—worked in concert with the District Judge. Davila further argues that even if he did not impute the Magistrate Judge's comments to the District Judge, the damage was done at the time of the Magistrate Judge's comments. Thus, Davila argues, it is irrelevant that Davila entered his plea before a different judge.

32

There is no requirement that a reversible Rule 11(c)(1) violation must take place at the plea hearing, or that the judge who takes the plea be the one who committed the violation. See Kraus, 137 F.3d at 456–57 (holding error was not harmless although the district court's law clerk rather than the court itself participated in plea discussions). However, it is not irrelevant to the prejudice analysis that Davila entered his plea before a judge who did not commit the violation. In the vast majority of cases in which courts have found a defendant was prejudiced by a Rule 11(c)(1) violation, the judge who made the improper comments was the same judge who took the plea. See, e.g., Kyle, 734 F.3d at 959; Pena, 720 F.3d at 577; Baker, 489 F.3d at 360; Bradley, 455 F.3d at 455. Thus, the fact that "at the time of [Davila's] plea hearing, there was no blending of judicial and prosecutorial functions," Davila II, 133 S. Ct. at 2149, is another circumstance that weighs against a finding of prejudice. See Castro, 736 F.3 at 1317 (Martin, J., concurring in the result only) (explaining that because the district court itself committed the Rule 11(c)(1) violation during Castro's plea hearing, the case "presents a closer question on prejudice" than Davila's case).

Davila does not address the fifth factor—that his final plea agreement was significantly more favorable than the agreement the Government initially offered him. As discussed above, a likely inference from this is that Davila decided to plead because he had negotiated a better deal.

Finally, Davila makes three broad arguments in support of a finding of prejudice. First, Davila points out that the record contains ample evidence of his firm anti-plea mentality prior to the hearing at which the Magistrate Judge made his improper remarks. As noted, we agree that this factor supports Davila's argument. However, in light of the evidence provided by the remainder of the record, this is not enough to tip the balance and require that we find it reasonably probable that the Magistrate Judge's comments caused Davila to plead.

Second, Davila points to the "extreme nature" of the Rule 11(c)(1) violation here, characterizing it as "a case of judicial excoriation." Appellant's Supp'l Br. at 9–10. Although we agree that the Magistrate Judge's comments regarding the desirability of a guilty plea were emphatic and highly improper, we note that, in essence, the Magistrate Judge's remarks warned Davila of potentially dire consequences should he fail to plead (while also reassuring Davila that Loebl was qualified to represent him). Cf. Castro, 736 F.3d at 1309 (majority opinion) (finding the defendant was not prejudiced by the district court's admonition that he may face additional charges or a more severe sentence should he choose not to plead). In contrast, cases in which courts have found a defendant was prejudiced by a Rule 11(c)(1) violation often involve comments endorsing specific provisions of a proposed plea agreement, or favoring modifications to or different terms for an agreement. See, e.g., Kyle, 734 F.3d at 960–61; Pena, 720 F.3d at 565; Baker, 489

34

F.3d at 369; Kraus, 137 F.3d at 449–50.  We nevertheless find that this factor provides some degree of support for Davila's argument, but not enough to require a finding of prejudice in light of the full record.

Third, Davila argues that the Government has not identified any intervening event that might explain Davila's decision to change his plea.  This argument mischaracterizes Davila's burden under plain-error review.  Davila must show that it is reasonably probable that he would not have pled but for the Magistrate Judge's comments; the Government need not disprove that the comments precipitated Davila's plea by pointing out an alternative explanation for it.

Although what transpired in Davila's case was assuredly an unfortunate violation of Rule 11(c)(1), considering the record as a whole and following Castro, we are not convinced that Davila has demonstrated a reasonable probability that "the result would have been different but for the error."  See Castro, 736 F.3d at 1315 (quoting Rodriguez, 398 F.3d at 1301).  Thus, Davila has failed to meet his burden of demonstrating that the error affected his substantial rights under the third prong of the plain-error standard.

## IV.

For the foregoing reasons, we AFFIRM Davila's conviction.

SO ORDERED.