CLAY, Circuit Judge,
dissenting.
This case presents two questions, one of which is dispositive of the outcome, and both of which were wrongly decided by the majority. Because I conclude that the district judge’s participation in the plea negotiations, in violation of Rule 11(c)(1), was far from harmless, I would vacate Ushery’s sentence and remand this case to the district court, where Ushery could enter a plea or, if he failed to do so, proceed to trial.
The facts of this case represent an archetypical example of the dangerous and slippery slope faced by judges and defense counsel when they choose to ignore bright-line procedural safeguards in pursuit of what they surmise is the most just, equitable, or efficacious outcome in a particular case. Ushery was arraigned on May 16, 2013, and pleaded not guilty. His counsel moved for a rearraignment for the purpose of Ushery entering a guilty plea. Yet, instead of entering a guilty plea, Ushery expressed his displeasure with his counsel, pleaded not guilty, and asked for the appointment of a new attorney. The district judge granted Ushery’s request and reset the scheduled date of trial to a later date. Ushery’s new attorney also sought to schedule a rearraignment. The district judge called for a telephonic conference to schedule this rearraignment and, again, pushed back the date of trial because “continuing the trial in this case” was in the “best interest” of Ushery and of the public. (R. 19, Min.Ent.) He noted, “I looked through the criminal complaint, and the facts of the case are fairly straightforward, at least as alleged in the complaint.” (R. 60, Tel.Conf.Tr., p. 2). Defense counsel suggested that Ushery was not interested in a trial and if counsel was just given more time he could “resolve[]” Ushery’s continued “concern[] about signing” the plea agreement. (Id. at 6). The district judge thereafter queried defense counsel as to whether or not “it would help, to have a hearing with [Ushery] to discuss [his pleading options].” (Id.) After defense counsel replied affirmatively, the district judge indicated that he would “set a tentative plea date for” August 14, 2013. (Id. at 8). He also informed defense counsel that “[i]f [Ushery] does not plead guilty on that date, he may lose entitlement to the third point for acceptance of responsibility.” (R. 19, Min.Ent.)
Ushery did not attend the hearing on August 14, 2013 with the intention of pleading guilty. Nonetheless, the hearing began with the district judge informing Ushery that he had participated in a phone call with the prosecutor and defense counsel “to discuss the potential of having [Ushery] enter a plea of guilty.” (R. 61, Hr., p. 2). He continued by informing Ushery that he had reached the “drop-dead date” for pleading guilty if Ushery still wished to receive all credit for acceptance of responsibility when it came to determining Ushery’s sentence. (Id.) Defense counsel expressed his frustration, noting that he had discussed the plea with Ushery, but that Ushery had “issues that [defense counsel] [did not] necessarily agree with.” (Id. at 3). Defense counsel noted that it was not his intent to “prejudice Mr. Ushery,” his client, but that both he and the prosecutor thought that one final conversation in the presence of the district judge might be helpful. (Id.) During this conversation Ushery noted that he felt like he was “being muscled in[to] taking this time.” (Id. at 4). The district judge explained to Ushery that it was his decision alone to make, that he was not *226 wasting the court’s time, and that if he wished to go to trial he could. But after some time, the conversation refocused on the consequences to Ushery if he did not plead guilty at that very hearing.
The district judge noted that “today is the last date that I’m going to permit you to plead guilty if you vrant to plead guilty and receive that third point for acceptance of responsibility.” (Id. at 7). It was at this point that the negotiations began, with the prosecutor interjecting that he was willing to drop the appellate-waiver provision from the plea deal if that was the “holdup” for Ushery pleading guilty. (Id.) The district judge assented to the proposal; defense counsel conferred with Ushery off the record, and then affirmed that it was Ushery’s intent to plead guilty.
The next topic up for discussion was forfeiture. After discussing whether or not forfeiture of Ushery’s baseball cards was on the table, the district judge asked the prosecutor for his thoughts, and the prosecutor again agreed to modify the proposed terms to satisfy Ushery with respect to forfeiture, if he would only plead guilty. Defense counsel continued to negotiate terms by ensuring that he could still litigate whether money that had been seized from Ushery was subject to forfeiture. Ushery interjected, “I don’t know really what’s going on because I don’t have no — ,” but defense counsel cut him off to say “I think things are in order, Your Honor,” and the negotiations concluded. (Id. at 9).
Immediately following this exchange, without inquiring into the basis for Ushery’s confusion, the district judge asked whether the prosecutor had a written plea agreement that reflected the present understanding of the deal, save for the fact that the appellate-waiver provision and forfeiture of the baseball cards would need to be stricken. He next informed Ushery that he would be sworn-in to plead guilty while the prosecutor was “initialing” the changes being made to the proposed agreement. After Ushery was sworn in, he reiterated that he “really [didn’t] feel like” he had been given “enough time to talk to” his attorney about his pleading options. (Id. at 10). The district judge asked rhetorically whether “more time [would] make it easier for [Ushery] or more difficult?” (Id. at 11). He reaffirmed that Ushery would not be muscled into taking a deal, but followed up that assurance by telling Ushery that he might be facing a “Hobson’s choice ... where all of [his] choices [were] bad.” (Id.) The district judge again asked whether Ushery had been given enough time. This time, Ushery relented by saying, “yes, sir.” (Id.)
. Ushery was mostly compliant for the remainder of the hearing: . as his rights were being communicated to him in pro forma fashion; as the sentencing procedure was explicated; and as he was being told that he would be unable to withdraw his plea after it was entered. There was, however, one other extended dialogue about Ushery’s right to appeal his sentence. Ushery indicated that he still believed that his case had been “mishandled,” partly because he could not comprehend how he went from being prosecuted in a state court to being subject to federal prosecution that would include a career offender enhancement as a part of his sentence. (Id. at 37). After receiving additional assurances from the district judge that he could appeal his sentence, but not the conviction or pleading decision, Ushery again reluctantly consented and pleaded guilty.
The outcome reached by the majority is not fairly supported by these facts, and is based on a misunderstanding of the law with respect to what constitutes prejudice *227 to a substantial right. But before that issue is addressed, the first question presented by Ushery’s case is, who should bear the burden of proof when this Court reviews a sentencing appeal in the context of a Rule 11(c)(1) violation. In my view, it is plain that the burden must rest with the government because requiring a contemporaneous objection by a defendant under these circumstances is completely unworkable, when, as a practical matter, there is no one to object on the defendant’s behalf when his counsel has abdicated his responsibility to his client and is also involved in the violative activity.
I. Standard of Review
Rule 11 sentencing errors will not be reversed so long as they are harmless, but that does not mean that the burden of proof is unimportant and that this Court should impose a plain error standard. As noted by the majority opinion, four of our sister circuits have remarked favorably on the persuasive arguments in support of applying harmless error, review in the context of a Rule 11(c)(1) violation. See United States v. Kyle, 734 F.3d 956, 962 (9th Cir.2013); United States v. Nesgoda, 559 F.3d 867 n. 1 (8th Cir.2009); United States v. Baker, 489 F.3d 366, 373 (D.C.Cir.2007); United States v. Cano-Varela, 497 F.3d 1122, 1132 (10th Cir.2007).[1] However, instead of engaging with a difficult issue, the majority has blindly followed the Eleventh Circuit’s holding in United States v. Davila, 749 F.3d 982 (11th Cir.2014) (“Davila II”). In doing so, a new precedent has been set without thoughtful consideration of the reality faced by a defendant who has just witnessed his attorney, the prosecutor, and the district judge presiding over his case, all working in tandem against him toward one goal — coercing the defendant into accepting a particular plea agreement.
The majority’s holding suggests that a defendant confronted by such a situation should on his own accord stand up and say, “I object.” The sheer improbability of this hypothetical objection will ensure that all Rule 11(c)(1) violations are subject only to plain error review, requiring the defendant to prove that his substantial rights were affected. This, in turn, may invite prosecutors, defense counsel, and the district courts, to employ unduly coercive negotiation tactics when faced with a criminal defendant who refuses to plead, or is reluctant to plead — especially when the defendant is being told that he is being offered a favorable plea deal and that the likelihood of conviction, were he to proceed to trial, is overwhelming.
There is simply no good reason for this Court to follow the holding of Davila II. Regardless of the similarities or lack thereof between this case and Davila,[2] I remain unpersuaded by the argument offered in that opinion in support of applying *228 the plain error standard. In Davila II, the court reasoned that plain error review was appropriate simply because it had previously required a contemporaneous objection “in [a] situation[ ] where counsel may not desire to object.” 749 F.3d at 993 (citing United States v. Rodriguez, 627 F.3d 1372 (11th Cir.2010)). The prior incident, to which the .court was referring, is inapposite. In Rodriguez, the defendant argued that no objection was required to preserve a claim for judicial bias because an attorney might reasonably fear that his client would receive a less favorable sentence after having accused the judge of bias. 627 F.3d at 1377. The court rejected this argument — reasoning, in part, that judges are not so petty as to warrant the concern that defendants will receive vindictive sentences, and .attorneys are not so spineless that they would fail to make a valid objection when one is required. Id. at 1380. This reasoning has no application in the context of a Rule 11(c)(1) violation, fishery’s counsel failed to object in this case, not because he was too timid and fearful of angering the district judge, but because he was an active participant in the violation. Presumably, no attorney would object to his own actions; especially when the attorney is winning concessions that might induce his client to accept what the attorney, believes to be a favorable plea or, at least, what the attorney believes to be the best possible outcome under the circumstances.
The majority suggests that whether or not the attorney might object is irrelevant because “Ushery ... ‘had ample occasion to object himself in the months following [the district judge’s] comments.’ ” Maj. Op. at 219 (quoting Davila II, 749 F.3d at 993). In this instance, however, the passage of time is insignificant. It seems to me all too unlikely that defense counsel, after having participated in the impermissible negotiations, would advise Ushery that the district judge’s actions at the hearing were objectionable. Furthermore, there is no reason to expect that Ushery would object without his counsel’s advice. It is well understood that the Rule 11(c)(1) prohibition exists simply because defendants can easily be overborn by the formidable authority wielded by a district judge. See, e.g., Cano-Varela, 497 F.3d at 1132 (noting that the purpose behind the Rule is to “avoid the possibility that comments by the district court might coerce the defendant into accepting a plea negotiated by defense counsel”). Ushery was explicitly told by the district judge that once he pleaded guilty he would be unable to withdraw his plea. To expect that a lay person, under these circumstances, would intuitively understand that his rights had been violated and that he could thereafter object on that basis, after any length of time, is entirely unreasonable.
Because there is no legitimate expectation that a contemporaneous objection is likely to ever be made to a Rule 11(c)(1) violation under these circumstances, the plain error standard should not apply and the government should bear the burden of proof in applying the harmless error standard.
II. Plain Error and Substantial Right
Even if the plain error standard were appropriate, Ushery’s plea should still be vacated. I agree with the majority that the district judge’s actions in this case “raise[d] legitimate Rule 11 concerns.” Maj. Op at 220. In fact, I have no doubt that a violation occurred, because “[u]nder Rule 11, the judge’s role is limited to acceptance or rejection of the plea agreement....” United States v. Harris, 635 F.2d 526, 528 (6th Cir.1980). Once the judge has gone beyond that role, as the district judge did in this case, the rule has been violated.
*229 To avoid offering Ushery any relief, the majority found that his substantial rights were not affected. This contention is plainly wrong. Ushery only needed to demonstrate “a reasonable probability that, but for the error, he would not have entered the plea.” United States v. Dominguez Benitz, 542 U.S. 74, 88, 124 S.Ct. 2383,159 L.Ed.2d 157 (2,004). He did that, even by the majority’s own recounting of the facts. This conclusion is unsurprising, as most instances of Rule- 11(c)(1) violations impact a defendant’s substantial rights. United States v. Bradley, 455 F.3d 453, 463 (4th Cir.2006) (“[I]t will be rare that a clear violation of Rule ll’s prohibition against judicial involvement in plea negotiations does not affect substantial rights.”). However, relying on no case law whatsoever, the majority has required Ushery to show that “but for the district court’s actions, he would have proceeded to trial.” Maj. Op. at 221. This incorrect recitation of the law is no moré than a naked attempt to unfairly encumber defendants with a more difficult burden on plain error review.
When analyzed using the correct legal standard, the facts of this case clearly support a finding that Ushery’s substantial rights were affected. Ushery had twice pleaded not-guilty and refused to accept the government’s plea offer by the time that this third hearing, the rearraignment, had occurred. The hearing itself was agreed to by district judge explicitly for the purpose of “discussing] the potential of ... [Ushery] entering] a plea of guilty.” (R. 61, Hr., p. 2). Resetting the trial date, the district judge reasoned, was in Ushery’s “best interest;” after all, defense counsel had just announced, with respect to the guilty plea, that he could “get it resolved.” (R. 19, Min.Ent.); (R. 60, Tel.Conf.Tr., p. 6). Defense counsel, however, did not get it resolved. The date of the hearing arrived, and Ushery was still not prepared to consqnt to the government’s proposed plea agreement. That was Ushery’s response even after the district judge had informed him that he had reached the “drop-dead date” for pleading guilty. (R. 61, Hr., p. 2). Ushery indicated that he felt pressured, but the district judge again, later in the proceedings, remindéd him that “today is the last date that I am going to permit you to plead guilty if you want to ... receive that third point for acceptance of responsibility.” (Id. at 7). It was not until after the impermissible negotiations took place that Ushery finally indicated some openness to accepting the proposed plea agreement. But when the plea agreement was purportedly finalized, Ushery again expressed his reluctance to pleading guilty. Instead of accepting the agreement, he suggested that he had not had enough time to discuss his pleading options with his new attorney and that he remained uncomfortable with the agreement, given the length of the proposed sentence. The district judge responded, first by asking rhetorically whether additional time would be more or less helpful to Ushery, and then by explaining to Ushery the nature of his Hob-son’s choice. With no meaningful support or assistance even from his own attorney, it was only at this point that Ushery consented to the government’s proposed plea agreement. Notably, the agreement was only slightly different from the one he had flat out rejected at the beginning of the proceedings. There is no fair reading of these facts that suggests Ushery would have accepted this plea absent the district judge’s participation in the plea negotiations.
“Rule 11(c)(1) was adopted as a prophy-' lactic measure.” Davila I, 133 S.Ct. at 2149. It establishes a “bright line rule,” United States v. Pena, 720 F.3d 561 (5th Cir.2013), and whether the judge’s partic *230 ipation is aimed at helping the defendant is entirely irrelevant. United States v. Harrell, 751 F.3d 1235, 1239 (11th Cir.2014). Under no circumstances may the court suggest terms to be negotiated or serve as the mediator in the course of negotiations, as was the case here. The district court had two options in this situation: to either accept or reject an agreement that the parties had entered into or to permit the case to proceed to trial. If the parties failed to enter into an agreement, a trial would appropriately ensue. Whether a'trial was in Ushery’s best interest is not a subject for appellate review under these circumstances. Dominguez Benitez, 542 U.S. at 85, 124 S.Ct. 2333 (“[I]f it is reasonably probable he would have gone to trial absent the error, it is no matter that the choice may have been foolish.”). The role of this Court is to judge whether there is a reasonable probability that Ushery would not have accepted the plea when he did but for the judicial interference. The record, even as laid out in the majority opinion, clearly indicates that Ushery would not have entered into the plea agreement, absent the Rule 11 violation. Therefore, the guilty plea and sentence should be vacated and the case remanded to the district court where Ushery can either enter a plea, absent judicial interference, or proceed to trial.

. The Supreme Court in United States v. Davila (“Davila I”), albeit implicitly, also recognized some merit in considering the harmless error standard. See-U.S.-, 133 S.Ct. 2139, 2150, 186 L.Ed.2d 139 (2013) ("[W]e leave [the standard of review] issue[] to be addressed by the Court of Appeals on remand.”).

. The majority contends that the defendants are similarly situated, but they are not. For example, Davila entered into a plea agreement, and repeatedly affirmed that he was accepting the agreement absent any "pressure, threats, or promises,” months after the magistrate judge (not responsible for sentencing Davila) committed the Rule 11 violation, whereas Ushery repeatedly resisted accepting this particular plea agreement and only consented after the sentencing judge strongly suggested to him that he had no better options to choose from. The only apparent similarity between Ushery and Davila is the weakness of their bargaining positions due to the strength of the unfavorable evidence to be presented in their respective cases.