NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0536n.06

No. 12-6329

FILED
Jul 22, 2014
DEBORAH S. HUNT, Clerk

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,                 )
                                          )
    Plaintiff-Appellee,               )
                                          )        ON APPEAL FROM THE
              v.                 )        UNITED STATES DISTRICT
                                          )        COURT FOR THE WESTERN
CORY B. GEORGE,                           )        DISTRICT OF KENTUCKY
                                          )
    Defendant-Appellant.              )


BEFORE: WHITE, DONALD, and O'MALLEY[*], Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant Cory George pled guilty to eleven counts of investment fraud in violation of 18 U.S.C. § 1341. He appeals, arguing that this court should set aside his guilty plea because the United States Magistrate Judge improperly participated in plea discussions in violation of Federal Rule of Criminal Procedure 11(c)(1), rendering his plea involuntary. The Government responds that George's appeal is barred by the waiver of appeal in his plea agreement and because he did not object to the magistrate judge's determination that the plea was voluntary, and further asserts that the magistrate judge's comments at the motion hearing did not affect George's substantial rights. We AFFIRM.

**I.**

The indictment charges George with devising a scheme to defraud investors by selling them "Certificates of Deposit" advertised and marketed by George through his company, G3

---

[*] The Honorable Kathleen M. O'Malley, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

Capital Management. As part of the alleged scheme, George ran advertisements in local newspapers in Kentucky, Florida, and Texas, offering short-term certificates of deposit paying from three- to five-percent interest. George represented to investors that their funds would be placed in segregated, insured accounts and that their deposits were guaranteed and their money not at risk, but George actually commingled the funds and used them to invest in the commodities market, pay personal expenses, and make small interest payments to some investors.

George retained defense counsel, B.J. Early, who represented him in the district court proceedings. On March 20, 2012, just six days before the scheduled start of trial, Early filed a motion to withdraw as counsel, citing "[a] breakdown . . . in the attorney-client relationship," and "irreconcilable differences," but providing no details. The Government filed a response in opposition the same day, arguing that the local criminal court rules prohibit the withdrawal of counsel within twenty-one days of trial absent a "compelling reason," *see* W.D. Ky L.R. 57.6, and contending that "George's request to sever the relationship with his counsel less than a week before trial suggests that the desire for a delay in trial, and a dissatisfaction with plea negotiations, is the primary factor motivating his eleventh hour request for new counsel." The district court referred the motion to a magistrate judge and set the matter for hearing before the magistrate judge the next day.

The parties began the hearing by arguing the merits of Early's motion to withdraw, but the hearing culminated in George's change of plea. At the outset, the magistrate judge advised George and Early that he would need more information regarding the purported breakdown in their relationship to grant the motion to withdraw so soon before trial. Recognizing that the information might "very well invade the attorney-client privilege," the magistrate judge offered

the Assistant United States Attorney (AUSA) representing the Government an opportunity to be heard before excusing her to hear from George and Early outside her presence.

The AUSA recounted the parties' plea discussions during the week leading up to the motion to withdraw. She stated that she had met with George and Early on Thursday, March 15, 2012, to discuss a non-plea-related matter. During the meeting, she asked George his position on the plea offer then on the table, and "spent probably an hour discussing with him concerns or questions he had about certain enhancements." The conversation convinced her "there might be some potential to resolve th[e] case" by plea. The following Monday, the AUSA and Early continued discussions regarding the plea offer. They spoke several times by phone, with Early relaying their conversation to George. As a result, the AUSA agreed that she would not recommend certain sentencing enhancements that could have added four levels to George's total offense level, that she would recommend a three-point downward adjustment for acceptance of responsibility, and that she would agree that George could argue at sentencing regarding his criminal history. George rejected the proposed agreement, stating that he believed "a sentence of 63 months or somewhere around five years would be an appropriate sentence in this case." The AUSA refused to accommodate that request. The next day, Early filed the motion to withdraw.

After recounting these events to the magistrate judge, the AUSA concluded that she believed that George sought Early's withdrawal because

> [he] believes that a more experienced attorney would get a different or better plea offer from the United States. And it's for that reason, Judge, that I've gone into so much detail about the course of plea negotiations over the last few days in this case, because my comments here are really directed towards the defendant in this case, because Mr. Early has negotiated the best possible plea offer that he can get for this defendant and there will not be another plea offer.

The magistrate judge excused the AUSA and conferred with George and Early. Both parties quote the following exchange in full in their briefs:

> **THE COURT**: It just occurs to me before we get started here, Mr. George and Mr. Early, that, Mr. George, I really think what you need to do right now is stop and reconsider the government's offer that has been made to you in this case. I certainly can't force you take it, but I have heard what has been said here in this situation, and I think before we go any further and before I question you and before I question your attorney about this business of there being some sort of a breakdown in the attorney-client relationship that you and your attorney should have yet another conversation about this plea offer.
>
> I think you need to reconsider. I think it's in your best interest to reconsider. Like I say, I can't force you to do anything at all in this situation except rethink your position on this, because it's a big decision for you to make in this capacity, I understand, but the government is frankly making some sense when talking about in terms of what they have said. Not in terms of whether or not you and your attorney have some kind of breakdown going on here but frankly about their plea offer and whether or not their plea offer is offering you the best deal you can get.
>
> We have a place back here where these two gentlemen can have some privacy and do a little talking. Please have that conversation, and once you tell me that you're ready to go forward with the hearing –
>
> **MR. EARLY**: Your Honor, may I say something first to give you an overall picture?
>
> **THE DEFENDANT**: Before we go in the back, can I just have 30 seconds?
>
> **MR. EARLY**: Your Honor, I have spoken with Mr. George, and he would like to address the court before we go in back Your Honor.
>
> **THE COURT**: You may address the court.
>
> **THE DEFENDANT**: Your Honor, I actually contacted Ms. Ford [the AUSA] and left her a voicemail at her office over the telephone approximately a week before we entered into the plea negotiations. I contacted Ms. Ford or left her a voicemail approximately about a week before we entered into plea negotiations informing her that I had planned for Mr. Early's withdrawal. So I know her argument she feels that it was regarding dissatisfaction with the plea agreement.

**THE COURT**: I will satisfy myself on that issue. What I'm really trying to impress upon you is you really think hard about rejecting the last offer that was made in this case. As I understand it, at least for now, that offer is still available.

**THE DEFENDANT**: One of the things that caused a breakdown between Mr. Early and myself, there was some items that I wanted to have a suppression hearing on, some evidence and –

**THE COURT**: These are things that I need to talk to you about after you have reconsidered – I want you to go back and talk to Mr. Early again and go on through that process. If you decide after you have talked with him that you still want to go forward with this hearing, then at that point in time, I'm going to listen to both you and Mr. Early.

In this situation, there is going to have to be a really, really compelling reason for me to continue – to allow this motion to occur, to grant the motion and to continue this trial. This has been going on now for a great long period of time, and just now on the eve of trial to get up here, the rules are very plain. It says unless a compelling reason exists, an attorney of record is not permitted to withdraw within 21 days of trial, period.

Go talk to him.

During the recess, George and his counsel conferred, and the parties apparently resumed plea discussions. The Government agreed to additional concessions, allowing George to contest the amount-of-loss and vulnerable-victim adjustments at sentencing. When court resumed, Early withdrew his motion to withdraw and George pled guilty.

The parties do not dispute that the change-of-plea hearing itself met the requirements of Federal Rule of Criminal Procedure 11(b). George affirmed that he had discussed the matter with his attorney, that he was satisfied with the advice of counsel, and that no one had threatened him to get him to plead guilty. George acknowledged that, under the plea agreement, he waived his right to appeal his conviction and sentence and to collaterally attack his conviction. The magistrate judge found George's plea knowing, voluntary, and intelligent and accepted it.

At the outset of the change-of-plea hearing, George had signed a form consenting to plead guilty before the magistrate judge. The form explained that if the magistrate judge accepted his plea and recommended that the district court judge accept it, the district court would then make its own determination whether to accept or reject the plea, and George would have fourteen days from entry of the magistrate judge's recommendation to file objections or he would waive the opportunity to do so.[1] The magistrate judge issued his Report and Recommendation ("Report") the next day, recommending that the district court judge accept George's plea and impose sentence. The Report included a Notice stating that failure to file written objections to the Report within fourteen days of service would "bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge." *Id.* (citing 28 U.S.C. § 636(b)(1)(B)). George did not file objections. On April 10, 2012, the district court judge entered an order accepting the plea and finding George guilty. George did not object or move to withdraw his plea.

Four months later, on September 13, 2012, George filed a pro se motion for new counsel and to delay sentencing, arguing that Early had failed to file objections to inaccurate information in his Presentence Report (PSR), refused to contact defense witnesses for sentencing, and had not filed a sentencing memorandum. In the motion, George stated, "[My] decision to plead guilty is expressly related to counsel's assurance that he would provide [me] with effective assistance of counsel at sentencing by vigorously preparing for sentencing. Counsel's assurance goes to the validity of the plea agreement." The district court held a hearing on the motion. George did not

---

[1]The form in error cited Fed. R. Cr. P. 72(b) as the source for the fourteen-day rule. There is no Rule 72 in the Criminal Rules; Federal Rule of Criminal Procedure 59 governs objections to a magistrate judge's Report & Recommendation in a criminal case. The corresponding *civil* rule is Fed. R. Civ. P. 72(b).

seek to withdraw his plea at the hearing. The district court denied the motion for new counsel, but adjourned sentencing and ordered Early to file a sentencing memorandum.

The court held the sentencing hearing on October 16, 2012. The Government presented testimony from FBI Special Agent David McClelland and victim Wayne Tipton, Jr., and also played an hour-long video of other victims' statements. George testified and addressed the court during allocution. He stated that he knew he "made poor choices and that those choices caused people harm," but that he acted with the intent to make money for his clients, not defraud them, and that he decided to plead guilty "because [he] was accepting responsibility." His attorney had objected to the PSR's amount-of-loss and criminal-history calculations and to the vulnerable-victim enhancement. The district court overruled the first two objections, but sustained George's objection to the vulnerable-victim enhancement. The court calculated an offense level of 22 with a criminal-history category VI, resulting in a guidelines range of 84 to 105 months. The court sentenced George to a term of ninety-six months, followed by three years' supervised release. At the close of the hearing, George signed a form acknowledging his waiver of the right to appeal his sentence.

## II.

The Government argues that George waived his right to appeal both under the term of his plea agreement and because he failed to object to the magistrate judge's determination that his plea was voluntary. We disagree.

### 1. <u>Plea Agreement</u>

It is well settled that "'[c]riminal defendants may waive their right to appeal as part of a plea agreement, so long as the waiver is made knowingly and voluntarily.'" *United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012) (quoting *United States v. Swanberg*, 370 F.3d 622, 625 (6th

Cir. 2004). But "challenges to the validity of the waiver itself will be entertained on appeal."

*United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012). A defendant may challenge the validity

of the waiver on the grounds "that his plea was not knowing or voluntary, or was the product of

ineffective assistance of counsel." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) ("[I]t would

be entirely circular for the government to argue that the defendant has waived his right to an

appeal or a collateral attack when the substance of his claim challenges the very validity of the

waiver itself."). George argues that his plea was involuntary because the magistrate judge

participated in the plea discussions in violation of Rule 11(c)(1). This argument attacks the

validity of the plea, and therefore the validity of the waiver, and is not barred by his waiver of

appeal. *Acosta*, 480 F.3d at 422.

### 2. **Report & Recommendation**

Generally, a defendant who fails to object to a finding in a magistrate judge's Report &

Recommendation waives the objection on appeal. *See United States v. Walters*, 638 F.2d 947,

950 (6th Cir. 1981) ("[A] party shall file objections with the district court or else waive right to

appeal."); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (approving *Walters*'s waiver rule).[2]

We have applied the *Walters* waiver rule to alleged Rule 11 errors, *see*, *e.g.*, *United States v.*

*Waltman*, 529 F. App'x 680, 681 (6th Cir. 2013) (per curiam) (reasoning that defendant waived

his right to appeal a magistrate judge's determination under Rule 11(b)(3) that a sufficient factual

basis supported the plea), but we have never held that *Walters* bars an appeal challenging the

---

[2]Congress enacted Federal Rule of Criminal Procedure 59 in 2005 to create a procedure for review of magistrate judge decisions in criminal cases, modeled after the civil rule analogue, Federal Rule of Civil Procedure 72. The Rule also codified this court's waiver jurisprudence. *See* Fed. R. Crim. P. 59(a), (b)(2) ("Failure to object in accordance with this rule waives a party's right to review."); *see also id.* Advisory Committee Notes ("This waiver provision is intended to establish the requirements for objecting in a district court in order to preserve appellate review of magistrate judges' decisions." (citing *Thomas*, 474 U.S. at 155)).

*validity* of a plea. *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008) (declining to reach the issue but citing "two unpublished opinions [that] seemed to assume that *Walters* waivers do not apply in this setting" and concluding "that may well be right"); *see Lombardo v. Parker*, No. 92-3212, 1992 WL 236883, at * 1 (6th Cir. Sept. 24, 1992) (per curiam); *Saffold v. Bowers*, No. 89-3534, 1991 WL 227753, at *1 (6th Cir. Nov. 6, 1991).

When an appeal waiver is part of an involuntary plea agreement, we recognize that the conditions that rendered the plea involuntary are likely to have had the same effect on the defendant's decision to waive appeal, and we do not enforce the waiver. *See Acosta*, 480 F.3d at 422. Although Rule 59 gives the defendant a fourteen-day window in which to file objections to a magistrate judge's finding of voluntariness, we see no reason to expect the conditions rendering a plea involuntary to dissipate in so short a period of time. *See Taylor*, 281 F. App'x at 469 ("[Fourteen][3] days may not suffice to alert an otherwise incompetent or unknowing defendant to the involuntary or unknowing nature of his plea."). We review challenges to the validity of a plea for plain error despite an appeal waiver, even when a defendant fails to raise the issue throughout the entirety of the district court proceedings; we should do likewise when a defendant fails to raise the issue within two weeks of the magistrate judge's report. Accordingly, we decline to find that George's failure to object precludes his appeal, and we turn to the merits.

**III.**

George argues that the magistrate judge participated in his plea discussions in violation of Rule 11(c)(1) at the March 21, 2012, motion hearing. We generally review unpreserved Rule 11 errors for plain error. *See United States v. Davila*, 133 S. Ct. 2139, 2147 (2013) ("[A] Rule 11 error may be of the Rule 52(a) [harmless error] type, or it may be of the Rule 52(b) [plain error]

---

[3]Rule 59's time limit for filing objections was changed from ten to fourteen days in 2009.

kind, depending on when the error was raised."). In *Davila*, the Supreme Court addressed whether Rule 11(c)(1) errors require automatic vacatur of a conviction and held that they do not, overturning this Circuit's and the Eleventh Circuit's holdings to the contrary. *See id.* at 2143, 2145 n.2. *Davila* left open whether in certain cases unpreserved Rule 11(c)(1) errors may be judged under Rule 52(a)'s harmless-error standard rather than Rule 52(b)'s plain-error standard. *See id.* at 2150 (remanding for the Eleventh Circuit to address Davila's contention that "extraordinary circumstances" merit application of the harmless-error standard in his case). George does not argue that the harmless-error standard should apply here; we review his unpreserved Rule 11 claim for plain error.

Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Under the *Olano* test for applying Rule 52(b), there must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original). If these conditions are met, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997) (alteration in original) (quoting *Olano*, 507 U.S. at 736). To determine whether the magistrate judge's Rule 11(c)(1) error affected George's substantial rights, we consider "whether it was reasonably probable that, but for the Magistrate Judge's exhortations, [George] would have exercised his right to go to trial." *Davila*, 133 S. Ct. at 2150. In answering that question, we assess the magistrate judge's comments "not in isolation, but in light of the full record." *Id.* "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error

things would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004). Rather, it requires a defendant to "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* at 83 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

## IV.

We agree with George that the magistrate judge violated Rule 11(c)(1). "Under Rule 11, the judge's role is limited to acceptance or rejection of the plea agreement after a thorough review of the relevant factors; the judge should not participate in the plea bargaining process." *United States v. Harris*, 635 F.2d 526, 528 (6th Cir. 1980). The magistrate judge did more than that here by advising George that it would be in his "best interests to reconsider" the plea, by opining that the government was "frankly talking some sense" in suggesting that the plea offer was "the best deal" George could get, by encouraging George to "think hard about rejecting the last offer," and by refusing to address the motion to withdraw until George discussed the plea with his attorney. The comments constituted "error" that was "plain" under *Olano*.

We do not agree, however, that the magistrate judge's participation affected George's substantial rights, i.e., that in light of the "full record," George has shown that it was "reasonably probable that, but for the magistrate judge's exhortations [to accept the plea], [he] would have exercised his right to go to trial." *Davila*, 133 S. Ct. at 2150. This court has not yet applied *Davila*'s reasonable-probability standard to Rule 11(c)(1) error. George argues that the facts in his case are similar to those in *Davila* and that *Davila* itself requires us to find that the magistrate judge violated his substantial rights. We disagree.

In *Davila*, the defendant complained to the district court that he was dissatisfied with his attorney because his attorney "offered no defensive strategy, . . . but simply advised that he plead guilty." *Id.* at 2143. The magistrate judge held an in-camera hearing with Davila and his attorney, at which he informed Davila that he would not be appointed another attorney, advised Davila that "often times" pleading guilty "is the best advice a lawyer can give a client," and, as the conversation continued, urged Davila to "go to the cross," "tell it all," and plead guilty. *Id.* at 2144. The magistrate judge stated:

> The only thing at your disposal that is entirely up to you is the two or three level reduction for acceptance of responsibility. That means you've got to go to the cross. You've got to tell the probation officer everything you did in this case regardless of how bad it makes you appear to be because that is the way you get that three-level reduction for acceptance, and believe me, Mr. Davila, someone with your criminal history needs a three-level reduction for acceptance.
>
>     . . . .
>
> [T]hat two- or three-level reduction for acceptance is something that you have the key to and you can ensure that you get that reduction in sentence simply by virtue of being forthcoming and not trying to make yourself look like you really didn't know what was going on . . . . You've got to go [to the cross] and you've got to tell it all, Brother, and convince that probation officer that you are being as open and honest with him as you can possibly be because then he will go to the [D]istrict [J]udge and he will say, you know, that Davila guy, he's got a long criminal history but when we were in there talking about this case he gave it all up so give him the two-level, give him the three-level reduction.

*Id.* Three months later, Davila decided to plead guilty. *Id.* Before sentencing, Davila moved to vacate his plea, stating that it had been a "strategic" decision, but not that it was involuntary. *Id.* at 2145. On appeal, the Government conceded that the magistrate judge's comments violated Rule 11(c)(1). *Id.* The Eleventh Circuit set aside the plea, applying its automatic-vacatur rule. *Id.* The Supreme Court agreed that "[t]he Magistrate Judge's repeated exhortations to Davila to 'tell it all' in order to obtain a more favorable sentence were indeed beyond the pale." *Id.* at 2144 (citation omitted). But, as noted, the Court overruled the Eleventh Circuit's, and this

Circuit's, automatic-vacatur rules and remanded to the court of appeals for decision under the proper standard. *Id.* at 2150.

The Eleventh Circuit, applying plain-error review on remand, determined that the magistrate judge's "go to the cross" comments did *not* affect Davila's substantial rights. *See United States v. Davila*, 10-15310, 2014 WL 1428018, at \*9-14 (11th Cir. Apr. 15, 2014). It found the following factors relevant to its determination:

> Davila (1) swore under oath during his change-of-plea hearing that his plea was not coerced and acknowledged that the Government could prove the conduct underlying his offense; and (2) later moved to withdraw his guilty plea but, in doing so, did not mention the improper comments and instead offered different reasons for doing so. . . . (3) Davila pled guilty three months after the Rule 11(c)(1) violation occurred, not . . . close on its heels; (4) the District Judge who approved Davila's plea agreement and conducted the plea colloquy was not the judge who committed the Rule 11(c)(1) violation . . . ; and (5) Davila's final plea agreement was significantly more favorable than the agreement the Government initially offered him.

*Id.* at \*11. We agree that these are relevant considerations. They weigh both for and against George.

The events on the day of the hearing itself, taken alone, suggest that the magistrate judge's comments *did* influence George's decision to plead guilty. George appeared before the magistrate judge for a hearing on his motion to withdraw, not a change of plea hearing. George did not appear at the hearing with the intent to plead guilty. Although the parties had been engaged in plea discussion the week prior, George had refused the Government's most recent offer, and at the hearing, George attempted to address the magistrate judge only on the merits of his motion to withdraw. The magistrate judge repeatedly urged George to reconsider the Government's plea offer and refused to proceed with the hearing on the motion to withdraw until George did so. Almost immediately afterward, George decided to plead guilty and entered his

plea. The temporal proximity between participation and plea suggests prejudice. *See Davila*, 133 S. Ct. at 2149; *see also, e.g.*, *United States v. Pena*, 720 F.3d 561, 574 (5th Cir. 2013) ("Just five days [after the district court's comments], Pena pled guilty—a temporal proximity that supports a finding of prejudice."). Moreover, the magistrate judge who conducted the plea colloquy was the same judge who committed the Rule 11(c)(1) violation. *See Davila*, 2014 WL 1428018, at *11.

Reviewing the "full record," however, we think it improbable that George would have proceeded to trial absent the magistrate judge's participation. First, the plea agreement was an issue in the underlying motion to withdraw; the parties had negotiated a new potential agreement the past weekend and had failed to reach an agreement only two days prior. The Government made additional concessions in the plea agreement ultimately reached, agreeing to allow George to contest the amount-of-loss and vulnerable-victim enhancements at sentencing. *See Davila*, 2014 WL 1428018, at *14 ("[A] likely inference from [a more favorable final plea agreement] is that [the defendant] decided to plead because he had negotiated a better deal."). The concessions evidently were significant to George: in his motion to adjourn sentencing, he complained that Early was ineffective for failing to subpoena witnesses to testify regarding precisely those enhancements. Second, George's actions post-plea are relevant to the inquiry. *See Davila*, 133 S. Ct. at 2150. George filed a motion to adjourn sentencing four months after he pled guilty, in which he attacked the validity of the plea without arguing that the plea was involuntary or stating that the magistrate judge influenced his decision. *See* R. 64-1, Mot. to Continue, at 2 ("[My] decision to plead guilty is expressly related to counsel's assurance that he would provide [me] with effective assistance of counsel at sentencing by vigorously preparing for sentencing. Counsel's assurance goes to the validity of the plea agreement."); *see also Davila*, 133 S. Ct. at

2150 ("When [Davila] later explained why he elected to plead guilty, he said nothing of the Magistrate Judge's exhortations."). George's motion not only fails to implicate the magistrate judge's participation, but also suggests that he made a considered decision to plead guilty based on the sentence he hoped to receive and not that the decision was involuntary. George's statement at sentencing that he decided to plead guilty "because [he] was accepting responsibility" similarly supports the conclusion that his decision was voluntary. Finally, the magistrate judge's comments, although violative of Rule 11(c)(1), suggested that George *reconsider* the plea offer, but did not threaten specific, dire consequences should George fail to accept the plea. *See Davila*, 2014 WL 1428018, at *14. In sum, the record, taken as a whole, supports the conclusion that George was motivated to get the best sentence he could, took the district court's advice to reconsider the plea offer, and made a considered decision to accept the Government's improved offer rather than proceed to trial in just five days.

Because George has not shown that the magistrate judge's comments affected his substantial rights, we AFFIRM.