GILMAN, J., delivered the opinion of the court in which SUTTON, J., joined. CLAY, J. (pp. 225-30), delivered a separate dissenting opinion.
OPINION
RONALD LEE GILMAN, Circuit Judge.
During an August 14, 2013 rearraignment, Daniel L. Ushery, Jr. pleaded guilty to the distribution of crack cocaine. He was not prepared to plead guilty when the rearraignment first began. Instead of-adjourning the rearraignment, however, the district court oversaw a back-and-forth negotiation between the government’s attorney and Ushery’s counsel concerning specific provisions of a potential plea agreement.. Only after the government offered to strike the appeal-waiver provision from the proposed plea agreement— which occurred during the course of the colloquy with the district court — did Ushery express an intent to plead guilty. The court eventually accepted Ushery’s plea and, in December 2013, sentenced him to 252 months in prison, an upward variance of 17 months from the top end of the applicable Sentencing Guidelines range.
Ushery timely appealed, arguing that (1) the district court violated Rule 11(c)(1) of the Federal Rules of Criminal Procedure’s ban against judicial participation in plea discussions, (2) Ushery’s exclusion from an August 6, 2013 pretrial teleconference violated his right to be present at every critical stage of the proceedings, and (3) his 252-month sentence was substantively unreasonable. For the reasons set forth below, we AFFIRM the judgment of the district court.
I. BACKGROUND
A. Underlying offense
Ushery, in April 2012, sold approximately half a gram of crack cocaine to a confi *213 dential informant in Campbell County, Kentucky for $100. When a police officer attempted to arrest Ushery for the offense, Ushery escaped in his car,.running red lights and stop signs in the process. Only when Ushery crashed his car into a shed did the motorized chase end. He then fled on foot until he was eventually apprehended. The pursuing officer dislocated his shoulder in the process and subsequently retired due to the injury.
Upon Ushery’s arrest, he was found to be in possession of small amounts of her- - oin, crack cocaine, and marijuana, as well as $329.50 in cash. Ushery also admitted to swallowing two bags of heroin during the pursuit. He further admitted to selling drugs in the past. At the hospital where he was transported, Ushery threatened to kill the arresting officer and the officer’s family.
While in jail, Ushery called his girlfriend and asked her to retrieve money from a storage unit in Cincinnati, Ohio. The call was recorded by the police. After obtaining a search warrant, the police searched the storage unit and seized $8,781 in cash, a Marlin rifle, a .22 caliber handgun, ammunition, two boxes of baseball cards, and a digital scale.
A grand jury indicted Ushery in May 2013 for distributing crack cocaine, for possessing crack cocaine with the intent to distribute, and for possessing heroin with the intent to distribute, all in violation of 21 U.S.C. § 841(a)(1). The indictment also sought criminal forfeiture of the items seized from Ushery’s person and from his storage unit. As part of the proceedings, the government filed a notice pursuant to 21 U.S.C. § 851(a)(1) that Ushery had been convicted of three prior felony drug offenses.
B. Arraignment and plea discussions
Ushery pleaded not guilty during his initial arraignment on May 16, 2013. On June 27, 2013, Ushery’s counsel filed a motion for rearraignment, which the district court set for July 2. But Ushery again declined to plead guilty at the July 2 rearraignment, despite his counsel informing the court that Ushery had previously told counsel that “he was not going to trial” and that “he would have to plead.” His counsel alerted the district court to Ushery’s concern about being sentenced as a career offender, relating Ushery’s statement to counsel that “he cannot take that much time.”
During the rearraignment, Ushery expressed frustration with his counsel: “[My attorney is] making moves in this case without me. So I don’t even feel comfortable with him representing me.... I would like, if possible, just to have another attorney.” The court granted Ushery’s motion for new counsel and scheduled a status conference for July 9, 2013.
At the July 9, 2013 status conference, Ushery’s new counsel stated that he and Ushery were “on the same page,” and that he had explained to Ushery that they would either “resolve [the case] by plea or ... resolve it by trial.” The district court set August 19, 2013 as the trial date and August 6, 2013 as the date of the final pretrial conference. It also set August 2, 2013 as the last day for Ushery to file a motion for rearraignment to enter a guilty plea. Ushery’s counsel filed such a motion on August 2, at which time he also filed a motion to continue the rearraignment date. The court granted both motions and converted the August 6 pretrial conference into a telephonic status conference.

1. The August 6,2013 teleconference

On August 6, 2013, the govérnment’s attorney and Ushery’s counsel, but not Ushery, participated in a teleconference *214 with the district court. The court called for the conference “to determine how [to] proceed going forward.” Ushery’s counsel informed the court that he had filed the motion for rearraignment “because there were concerns” about the court’s deadline for doing so, but that Ushery had not yet made a decision. In discussing whether to push the trial date back a week, the court asked if Ushery needed the additional time “to try to work out final details of a plea agreement.” Ushery’s counsel responded affirmatively: “The resolution is a plea or a trial. Well, I can represent [that Ushery] doesn’t want to go to trial, but he’s concerned about signing. I said you have to make a decision. If I have a little more time, I can get it resolved.”
In response, the court asked if Ushery’s counsel thought “it would help to have a hearing with [Ushery] to discuss that with him.” Counsel said yes. The court accordingly set a “tentative plea date” for August 14, 2013, and moved the trial date to August 26, 2013. It also stated that “if the defendant pleads guilty on [August 14], he will be entitled to all points for acceptance of responsibility. Any pleas after that date will jeopardize that.”

2. The August 14, 2013 rearraignment

The district court began the August 14, 2013 rearraignment by informing Ushery that the government’s attorney and Ushery’s counsel had participated in a brief teleconference with the court “to discuss the potential of having [Ushery] enter a plea of guilty.” So that Ushery would “receiv[e] all credits for acceptance of responsibility,” the court stated that August 14 was “like a drop-dead date” for pleading guilty. Ushery’s counsel replied by saying that Ushery would not be pleading guilty that day: “We’re not at this point prepared to enter that plea.” Just a few sentences later, Ushery’s counsel reiterated the point: “At this stage, [Ushery]’s not ready to enter a plea. As I said to him, I’ll be here on the 26th.”
The district court, however, continued to engage with Ushery’s counsel, and soon with Ushery himself, about the latter’s decision regarding a potential guilty plea:
[USHERY’S COUNSEL]: ... [Ushery] does not want to waive his right to appeal.
THE COURT: He doesn’t need to waive his right to appeal.
[USHERY’S COUNSEL]: If I’m not mistaken, you’re indicating you’re satisfied with the plea agreement with the exception of paragraph 8. Is that accurate, Daniel?
THE DEFENDANT: Somewhat. I
mean, I feel like there’s too much time involved. But I would like to have a right to appeal, because I want my case [reviewed], because I feel like I’m being muscled into taking this time.
THE- COURT: You don’t need to be muscled to do anything, sir. You have the right to a jury trial. We have a jury trial on the 26th.
THE DEFENDANT: It’s obvious I’m going to lose the jury trial.
THE COURT: All I’ve done is review the record. I know what the criminal complaint and the affidavit says. I know generally what the facts are going to be, as presented to the jury. Guilt or innocence is one determination. Sentencing is another determination. Of course, what you do today or potentially do today impacts the sentence, and I’m sure [your attorney] has told you that. I am not going to allow you, nor is [your attorney] going to allow you to be muscled into doing anything that you don’t want to do yourself.
Ushery continued to articulate his hesitation with pleading guilty: “I’ve been in *215 forming [the government] that I didn’t want to go to trial. I would just — like 15 years is too stiff.... I’m trying to figure out a way to attack this career criminal [enhancement] without wasting nobody’s time.” The court responded by assuring Ushery that he could make whatever arguments he felt appropriate, while also acknowledging that the court would have' to consider the Sentencing Guidelines, including possible career-offender status, in determining Ushery’s sentence. Ushery was again advised by the court that he could plead guilty, with or without a plea agreement, or instead go to trial.
But the district court also warned Ushery about the consequences of failing to plead that day: “[T]oday is the last date that I’m going to permit you to plead guilty if you want to plead guilty and receive that third point for acceptance of responsibility,” and explained the purpose behind the third point. The government’s attorney then interjected as follows:
Judge, if our holdup [is that] Mr. Ushery would like to reserve the right to appeal his sentence, I’m willing to amend the plea agreement to allow him to appeal the length of his sentence. If that’s our holdup here and if that’s what Mr. Ushery was looking for in a plea agreement that he didn’t have before, I’m willing to do that. I know that’s not a negotiation with the Court, and the Court stays out of those things.
But Mr. Ushery, I guess my point is if the agreement is acceptable except for the language in paragraph 8, then we can change that to say that with the exception that the defendant may appeal the length of sentence, period. That way, whatever sentence is imposed, Mr. Ushery will have the right to appeal. If that’s the thing holding Mr. Ushery up, I’m willing to make that concession, given the nature of the background of this case.
The district court responded, “Very well,” before either Ushery or his counsel had said a word. After conferring with Ushery off the record, his counsel said to the court that Ushery “inten[ds] to enter a guilty plea, .but he adamantly does not want to waive any appeal as it relates to the length of the sentence.” The government then agreed to delete paragraph 8, which contained the appeal waiver, from the plea agreement.
With the agreement not yet finalized, the discussion next turned to forfeiture:
[USHERY’S COUNSEL]: We’ll have to have a hearing on the forfeiture. We’re not talking forfeiture.
THE COURT: One of the items of forfeiture is baseball cards.
[USHERY’S COUNSEL]: That’s one of his gripes. I can understand that too
[GOVERNMENT’S COUNSEL]: If our holdups are the appeal and the baseball cards, those things aren’t sufficiently — if he wants to enter a guilty plea, we’ll cross out paragraph 8 and we’ll return the baseball cards.
THE COURT: All right.
[USHERY’S COUNSEL]: He doesn’t want to waive his right to a forfeiture hearing on the money. I’m not trying to negotiate with the Court. I beg your-pardon for not standing.
[GOVERNMENT’S COUNSEL]: We’ll litigate the forfeiture at the sentencing.
[USHERY’S COUNSEL]: That’s what we’ll do, litigate it at the sentencing.
THE DEFENDANT: I don’t know really what’s going on because I don’t have no—
[USHERY’S COUNSEL]: That’s what we intend to litigate, you got me? I think things are in order, Your Honor.
*216 The district court then asked the parties if they had reached a written agreement: “Do we have a written plea agreement that is commensurate with the agreement to adjudicate any disputes regarding the forfeiture allegation at sentencing and to strike the two boxes of baseball cards from the agreement to allow those to be returned to him?” The government answered that they did: “Judge, we’ll just remove paragraph^] 6 and 8 from the plea proposal. Paragraph 6 is the one that says he agrees to forfeiture. Paragraph 8 is the one that waives his appellate rights. We can cross those two paragraphs off, and I think we can proceed.” Without a word from either Ushery or his counsel, the court said that it would look at the modified agreement: “All right. If you’d like to propose that, I’ll take a look at it.”
Seeing that a plea agreement had been reached, the district court directed the clerk to place Ushery under oath and then proceeded to question him:
THE COURT: Mr. Ushery, let me just start by confirming with you that you’ve had enough time to consult with your new lawyer ... prior to today. Have you had enough time to talk to him about your options in this case?
THE DEFENDANT: I mean, I really don’t feel like I have, but I guess.
THE COURT: All right. What would more time do for you?
THE DEFENDANT: I mean, I just, I’m really concerned about the career criminal [enhancement] because I don’t want to be sent away for the rest of my life.
THE COURT: I recognize that, but would more time make it easier for you or more difficult? I’m trying to get to the bottom of your hesitation. The career offender provision of the guideline, I’ll go over it with you here in a little bit, but what I’m going to tell you now, what I told you earlier as you were sitting there, the Court will not muscle you, nor will your lawyer or the prosecutor, into doing something that you don’t want to do.
Sometimes, individuals are given what’s called a Hobson’s choice, and that’s where all your choices are bad. This may be one of those times for you.
When the court again asked if Ushery had “had enough time to make that informed decision,” Ushery responded affirmatively: Wes, sir.”
Ushery ultimately pleaded guilty to Count 1 of the indictment — the distribution of crack cocaine — in violation of 21 U.S.C. § 841(a)(1). Pursuant to the plea agreement, the other two counts were dismissed. The court accepted the plea, found Ushery guilty of the offense, vacated the August 26, 2013 trial date, scheduled a forfeiture hearing for December 3, 2013, and set the case for sentencing on December 17, 2013.
C. Forfeiture and sentencing
At the outset of the December 3, 2013 forfeiture hearing, Ushery^ counsel informed the district court that Ushery “desired to forego the hearing in lieu of a settlement.” The court promptly approved the parties’ settlement agreement, which provided for the forfeiture of the currency, guns, and ammunition and the return of the boxes of baseball cards, pocket digital scale, and backpack containing personal items.
That left only sentencing. The Presentence Report (PSR), prepared in November 2013, calculated Ushery’s adjusted offense level at 18, starting with a base offense level of 14 and adding two two-level enhancements. But the PSR also found that the career-offender enhancement applied, pursuant to U.S.S.G. *217 § 4B1.1, such that Ushery’s actual base offense level was 34, regardless of the adjusted offense level. After reducing his offense level for the acceptance of responsibility, pursuant to U.S.S.G. § 3El.l(a), Ushery’s total offense level became 31. That offense level, combined with a criminal history category of VI, produced a Guidelines range of 188 to 235 months in prison.
At the December 17, 2013 sentencing hearing, the district court first determined what Ushery’s adjusted offense level would have been in the absence of the career-offender enhancement. The court agreed with the PSR that a two-level enhancement applied for possessing a firearm and that another two-level enhancement applied for making a credible threat to use violence (against a government official and his family). In addition, the court found applicable a two-level enhancement for obstructing justice (by swallowing two bags of heroin during the pursuit) and a two-level enhancement for recklessly creating a substantial risk of serious bodily injury (to a law-enforcement officer) in the course of fleeing. Ushery’s adjusted offense level was therefore 22 and not 18. But as the court pointed out, that had no actual effect on Ushery’s Guidelines calculation because the base offense level for career offenders is 34. The court agreed with the PSR that, with a three-level reduction for acceptance of responsibility and a criminal history category of VI, Ushery’s advisory Guidelines range was 188 to 235 months in prison.
The district court next considered the 18 U.S.C. § 3553(a) sentencing factors. It emphasized that Ushery has “been a drug trafficker for practically [his] entire life in one way, shape' or fashion.” The court also pointed out that other enhancements that would have applied — for possession of a firearm, threatening to use violence, obstruction of justice, and reckless endangerment during flight — were not taken into account by the career-offender enhancement that ultimately applied. Referring again to those aggravating factors, the court expressed the need to impose “[a] sentence that reflects the serious[ness] of the offense.” It specifically noted the damage that Ushery had caused: “Your flight caused an injury that caused a police officer to ultimately retire. Your flight caused property damage to an individual who came here for the sentencing today.” The court further pointed to Ushery’s “very significant” criminal history (including more than 10 juvenile and 20 adult convictions) and reasoned that prior sentences had had “no deterrent effect” on Ushery thus far.
As for potentially mitigating factors, the district court noted Ushery’s difficult upbringing, his mental-health problems, and the small amount of drugs at issue in the present case. Nevertheless, the court decided that “a variance upward is necessary to reflect the seriousness of the offense and to provide just punishment as well as protect the public, given the fact that the defendant has been a menace to society practically his entire life.” It also noted that “a sentence [of 120 months] as requested by the defendant would create a disparity among similarly situated defendants convicted of similar offenses.”
The district court ultimately sentenced Ushery to 252 months of imprisonment, an upward variance of 17 months from the top of the applicable Guidelines range, to be followed by ten years of supervised release, which was within the Guidelines range of six years to life. Ushery timely filed this appeal in January 2014, after the court granted him an extension of time to do so.
*218 II. ANALYSIS
A. The district court did not commit plain error, even if it improperly participated in plea discussions during Ushery’s August 14, 2013 rearraignment
Ushery argues that the district court violated Rule 11(c)(1) of the Federal Rules of Criminal Procedure by participating in plea discussions at his August 14, 2013 rearraignment. By allowing the parties to negotiate the final terms of a plea agreement in its presence, the district court at the very least did not follow best practices, and may in fact have violated Rule 11(c)(1). But Ushery has not met his burden of showing that any error affected his substantial rights, as the plain-error standard of review requires. Because the record instead reflects that Ushery would likely have pleaded guilty even without the court’s participation, the district court did not commit plain error.

1. Standard of review

“We generally review unpreserved Rule 11 errors for plain error.” United, States v. George, 573 Fed.Appx. 465, 471 (6th Cir.2014) (citing United States v. Davila, U.S. -, 133 S.Ct. 2139, 2147, 186 L.Ed.2d 139 (2013) (Davila I)). Ushery admits that he did not object to the alleged Rule 11 violation below. To establish plain error, the burden is on the defendant to show (1) error that (2) was plain, (3) affected defendant’s substantial rights, and (4) seriously affected the fairness, integrity, or public reputation of the judicial proceedings. United States v. McCreary-Redd, 475 F.3d 718, 721 (6th Cir.2007) (citing United States v. Koeberlein, 161 F.3d 946, 949 (6th Cir.1998)).
Ushery, however, argues that “extraordinary circumstances” excuse his silence, such that the harmless-error standard under Rule 52(a) of the Federal Rules of Criminal Procedure should apply instead of the plain-error standard. Rule 52(a) provides that “[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.” Fed.R.Crim.P. 52(a). The government bears the burden of showing harmless error when Rule 52(a) applies, Davila I, 133 S.Ct. at 2147 (citing United States v. Vonn, 535 U.S. 55, 62, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002)), which is why Ushery urges the application of Rule 52(a) rather than the plain-error standard.
In Davila I (the case on which Ushery relies), the Supreme Court remanded the case to the Eleventh Circuit to decide whether the harmless-error or the plain-error standard of review applied to the defendant’s claim that the magistrate judge violated Rule 11(c)(1). Id. at 2150. •The Eleventh Circuit subsequently held that the plain-error standard applied. United States v. Davila, 749 F.3d 982, 993 (11th Cir.2014) (Davila II).
Nevertheless, other circuits have suggested that an unobjected-to Rule 11(c)(1) violation may warrant a less exacting standard of review than plain error. See United States v. Kyle, 734 F.3d 956, 962 (9th Cir.2013) (“Some courts of appeal, including this circuit, have recognized that it may be inappropriate to penalize a defendant for his counsel’s failure to object to an error where such objection was either unlikely or futile.”); United States v. Nesgoda, 559 F.3d 867, 869 m 1 (8th Cir.2009) (declining to decide the issue on collateral review, but acknowledging that the defendant’s “policy arguments in support of a lesser standard of review are somewhat compelling”); United States v. Baker, 489 F.3d 366, 372-73 (D.C.Cir.2007) (calling the proper standard of review a “close question” in light of “the virtual catch-22 defendants are faced with when courts in *219 ject themselves into plea negotiations”); United States v. Cano-Varela, 497 F.3d 1122, 1132 (10th Cir.2007) (expressing hesitance at “applying] a heightened standard of review when defense counsel did not object to receiving the court’s help”).
None of these courts actually reached the issue, but the Kyle, Baker, and Cano-Varela courts all assumed without deciding that plain-error review applied because, in each case, the court found that the defendant’s proof met the plain-error standard. Kyle, 734 F.3d at 962-63; Baker, 489 F.3d at 373; Cano-Varela, 497 F.3d at 1132. Even the Davila II court acknowledged that “it may be inappropriate in certain circumstances to penalize a defendant for failing to object to judicial participations in plea negotiations.” 749 F.3d at 992. But in finding plain error to be the proper standard, the Eleventh Circuit noted that it had previously “applied the contemporaneous objection rule even in situations where counsel may not desire to object.” Id. at 993.
We find Ushery’s situation similar to that of the defendant in Davila II. In his appellate brief, Ushery claims that he did not have a meaningful chance to object during the August 14, 2013 rearraignment, and “[e]ven when [he] later did speak up, he was interrupted by his own defense counsel, and lectured by the district court about his hesitancy to plead guilty and having to make a ‘Hobson’s choice.’ ” But even if we were to assume that his counsel’s actions deprived him of a meaningful opportunity to object during the rearraignment, Ushery nevertheless “had ample occasion to object himself in the months following the [district judge’s] comments,” -including at his December 17, 2013 sentencing hearing. See Davila II, 749 F.3d at 993. Ushery, however, did not object until the instant appeal. We therefore review his claim under the plain-error standard.

2. We need not decide whether the district court’s conduct amounted to error that was plain, although it certainly violated best practices

Rule 11 absolutely prohibits judicial participation in plea negotiations: “An attorney for the government and the defendant’s attorney ... may discuss and reach a plea agreement. The court must not participate in these discussions.” Fed. R.Crim.P. 11(c)(1). “Under Rule 11, the judge’s role is limited to acceptance or rejection of the plea agreement after a thorough review of the relevant factors; the judge should not participate in the plea bargaining process.” United States v. Harris, 635 F.2d 526, 528 (6th Cir.1980).
“The primary reason for Rule 11 is that a judge’s participation in plea negotiation is inherently coercive,” even if it is not intended to be. United States v. Barrett, 982 F.2d 193, 194 (6th Cir.1992), abrogated on other grounds by Davila I, 133 S.Ct. 2139 (2013). In finding that a Rule 11(c)(1) violation had occurred, the Eleventh Circuit recently explained that the district court’s participation in the plea-bargaining process is prohibited “because statements and suggestions by the judge are not just one more source of information to plea negotiators; they are indications of what the judge will accept, and one can only assume that they will quickly become the focal point of further discussions.” United States v. Harrell, 751 F.3d 1235, 1239 (11th Cir.2014) (internal quotation marks omitted).
The comments at issue in the present case raise significant Rule 11 concerns. During the August 14, 2013 rearraignment, ' the district court oversaw a back-and-forth negotiation between the government’s attorney and Ushery’s counsel concerning *220 specific provisions of a potential plea agreement. The government offered to strike the appeal-waiver provision from the proposal after Ushery’s counsel raised the issue and the district court stated that Ushery need not waive his right to appeal. Only then did Ushery express an intent to plead guilty.
The government also agreed to return Ushery’s baseball cards after the district court, on its own, raised the cards as an issue. During the forfeiture discussion, Ushery attempted to interject (“I don’t really know what’s going on because I don’t have, no—”), but he was cut off by his own attorney. Moving along, the court asked if there was a writing that reflected the parties’ recent agreements. The government responded that it would cross out paragraphs 6 (regarding forfeiture) and 8 (regarding appellate waiver) from the proposal, to which the court replied with apparent approval (and without waiting to hear from Ushery or his counsel): “AJ1 right. If you’d like to propose that, I’ll take a look at it.”
Here, the district court did not simply accept the plea after it had been finalized. The court instead commented on a proposed plea that Ushery had not yet agreed to, and the specific items that the court raised became the focal points—indeed, the only points—of the continued negotiation. Even if the court did not go so far as to violate Rule 11(c)(1), it certainly violated best practices by allowing the government’s attorney and Ushery’s counsel to negotiate specific terms of a proposed plea agreement in its presence. The court could easily have asked the parties to step out of the courtroom or adjourned the rearraignment to a later date, rather than preside over what were clearly plea negotiations.
What’s more, some of the district court’s comments might have suggested that it favored a plea agreement. The court could be seen as hinting at a preference simply by overseeing the discussions. See Barrett, 982 F.2d at 194 (“By intervening to facilitate a plea ..., the judge communicated to the defendant that he desired a plea. He thereby raised the possibility, if only in the defendant’s mind, that a refusal to accept the judge’s preferred disposition would be punished.”). In addition, the. court’s suggestion that Ushery faced a “Hobson’s choice, ... where- all your choices are bad,” could have led Ushery to believe that the court preferred for him to plead guilty. Such comments could be seen as compromising the court’s neutrality in assessing the voluntariness of the plea. See id. at 195.
On the other hand, the district court may well have been acting with Ushery’s best interests in mind. “Nevertheless, there is no good motives exception to the bar on judicial participation in plea discussions.” Harrell, 751 F.3d at 1240. Nor do the court’s repeated comments that the choice to plead guilty was Ushery’s and Ushery’s alone necessarily negate an error. See United States v. Cano-Varela, 497 F.3d 1122, 1134 (10th Cir.2007) (rejecting the government’s argument that “the district court did not participate in the plea discussions because it repeatedly reminded [the defendant] that he had the choice to plead guilty or to go to trial” under circumstances where “the judge’s remarks [comparing a post-trial sentence to a post-plea sentence] tainted everything that followed”).
Despite what appear to be good intentions on the part of the district court, some of the court’s comments during Ushery’s August 14, 2013 rearraignment raise legitimate Rule 11 concerns. The court at the very least did not follow best practices when it allowed counsel to negotiate cer *221 tain terms of a proposed plea agreement in its presence. At worst, the court violated Rule 11(c)(1) by directly participating in the plea negotiations. We need not decide whether the court committed error that was plain, however, because Ushery has failed to show that his substantial rights were affected, which is the third prong of the plain-error standard.

3. Ushery has not shown any error that affected his substantial rights

To satisfy the plain-error standard of review, the error must affect Ushery’s substantial rights. See United States v. McCreary-Redd, 475 F.3d 718, 721 (6th Cir.2007). Ushery, in other words, “must show a reasonable probability that, but for the error, he would not have entered the plea.” See United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). To reverse, we must determine, based on the entire record, “that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.” Id. (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (internal quotation marks omitted).
Even if we were to assume that there was a violation of Rule 11, Ushery has failed to show a reasonable probability that, but for the district court’s actions, he would have proceeded to trial. Two cases in which the Eleventh Circuit found a Rule 11 violation, but no prejudice, are instructive. In Davila II, the Eleventh Circuit listed five distinct factors suggesting that the defendant was not prejudiced, two of which overlapped with the court’s prior ruling in United States v. Castro, 736 F.3d 1308 (11th Cir.2013):
Like the defendant in Castro, Davila (1) swore under oath during his change-of-plea hearing that his plea was not coerced and acknowledged that the Government could prove the conduct underlying his offense; and (2) later moved to withdraw his guilty plea but, in doing so, did not mention the improper comments and instead offered different reasons for doing so____(3) Davila pled guilty three months after the Rule 11(c)(1) violation occurred, not — like the defendant in Castro — close on its heels; (4) the District Judge who approved Davila’s plea agreement and conducted the plea colloquy was not the judge who committed the Rule 11(c)(1) violation — unlike in Castro, where the judge who took the defendant’s plea was the same judge who made the improper remarks; and (5) Davila’s final plea agreement was significantly more favorable than the agreement the Government initially offered him.
Davila II, 749 F.3d at 995-96. This list is not an exhaustive one, nor is any single factor dispositive, but an analysis of the factors is nonetheless helpful in assessing the prejudice, if any, that Ushery suffered.
Three of the five factors weigh against finding that Ushery’s substantial rights were affected. Similar to the defendant in Davila II, Ushery admitted under oath that he had engaged in the conduct underlying his offense. The final plea agreement was also significantly more favorable to Ushery than the agreement that the government initially offered him, with the appellate-waiver and forfeiture clauses being deleted. Finally, unlike the defendant in Davila II, Ushery never moved to withdraw his guilty plea below. Ushery instead first raised the alleged Rule 11 violation nearly a year after he had pleaded guilty.
On the other hand, two of the five factors appear at first glance to weigh in favor of Ushery’s claim that he was prejudiced: Ushery pleaded guilty immediately *222 after the purported Rule 11 violation, and the same judge who participated in the colloquy also took Ushery’s plea. The Supreme Court noted the government’s acknowledgement in Davila I that “if there is a serious Rule 11(c)(1) error, and the defendant pleads guilty right after that, the error would likely qualify as prejudicial.” Davila I, 133 S.Ct. at 2149 (internal quotation marks and alterations omitted). Further, “[i]n the vast majority of cases in which courts have found [that] a defendant was prejudiced by a Rule 11(c)(1) violation, the judge who made the improper comments was the same judge who took the plea.” Davila II, 749 F.3d at 998 (collecting cases). But the fact that the Eleventh Circuit did not find substantial prejudice in Castro even when these two factors were present indicates that they, too, are not dispositive.
Moreover, these two potentially negative factors are substantially neutralized in the present case. The fact that Ushery pleaded guilty at the end of the colloquy, for instance, is offset by the fact that he took no steps to withdraw his guilty plea between the August 14, 2013 rearraignment and his sentencing hearing on December 17, 2013. For that matter, Ushery has never requested at any time to have his case tried on the merits. As for the same judge presiding over the plea negotiations and taking Ushery’s plea, the comments made by the judge here were not nearly as “improper” as they were in Castro, 736 F.3d at 1311 (“Do you understand that the government has made you a plea offer in which they have made certain concessions, that if you don’t plead today they may charge you with other things that will make your sentence even more severe?”), or in Davila II, 749 F.3d at 988 (where the magistrate judge urged the defendant to “go to the cross,” accept responsibility, and plead guilty because “there may not be a viable defense” to the charges).
Further tipping the scales toward a finding of no prejudice is the fact that Ushery and his counsel stated on multiple occasions that Ushery did not want to go to trial. See Dominguez Benitez, 542 U.S. at 84-85, 124 S.Ct. 2333 (“Relevant evidence' [regarding the substantial-rights question] included [the defendant’s] statement to the District Court that he did not intend to go to trial, and his counsel’s confirmation of that representation, made at the same hearing.”). The statements in the instant case included Ushery telling his-first counsel that “he was not going to trial” and that “he would have to plead,” his second counsel informing the court that Ushery “doesn’t want to go to trial,” Ushery commenting that “It’s obvious I’m going to lose the jury trial,” and Ushery explaining to the court that “I’ve been informing [the government] that I didn’t want to go to trial.... I’m trying to figure out a way to attack this career criminal [enhancement] without wasting nobody’s time.”
Ushery might not have been ready to plead guilty at the beginning of the August 14, 2013 rearraignment, but these statements show that Ushery never seriously considered proceeding to trial. Combined with the other Davila II factors, the statements of Ushery and his counsel negate any reasonable probability that, but for the district court’s involvement in the plea negotiations, he would not have pleaded guilty. We therefore conclude that Ushery’s substantial rights were not adversely affected by the proceedings at the August 14, 2013 rearraignment. He has thus failed to satisfy the plain-error test.
B. The district court’s pretrial teleconference with counsel did not violate Ushery’s right to be present at every critical stage of the proceedings
Ushery also argues that the August 6, 2013 teleconference between the district *223 court and counsel — but not Ushery — violated both his Fifth Amendment due process right to be present at every critical stage of the proceedings and his right under Rule 43 of the Federal Rules of Criminal Procedure to be present at every stage of trial. Because Ushery did not timely object to his absence at the August 6 teleconference, we review his claim under the plain-error standard. See United States v. Taylor, 489 Fed.Appx. 34, 43 (6th Cir.), cert. denied, — U.S.-, 133 S.Ct. 627, 184 L.Ed.2d 407 (2012) (reviewing the defendant’s challenge to being excluded from most pretrial hearings, sidebars, and a hearing on counsel’s conflict of interest under the plain-error standard because the defendant failed to contemporaneously object at trial).
A defendant has “a due process right to be present at a proceeding ‘whenever his presence has a relation, reasonably substantial, to the fulness (sic) of his opportunity to defend against the charge.’” United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). Rule 43, in turn, requires a defendant to be present at “(1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing.” Fed. R.Crim.P. 43(a).
The purpose of the August 6, 2013 teleconference, as noted by the district court, was “primarily to determine how [to] proceed going forward.” During the short status conference, the district court and counsel moved the date of the trial and agreed to meet on August 14, 2013 for a “tentative plea date” with Ushery present. The teleconference appears to have been “a brief, administrative conference” that did not have “significant consequences” for Ushery and therefore was not a critical stage of the proceedings. See Hereford v. Warren, 536 F.3d 523, 529-30 (6th Cir.2008) (finding that a short ex parte conference between the prosecutor and the judge during defendant’s trial was “a de minimis communication that was administrative in nature” and did not qualify as a critical stage of the proceedings). We agree with the government’s observation that, “[i]n fact, the upshot of the call was to afford Ushery the very relief to which he now claims that he was entitled, namely, his presence during discussions concérning his decision whether to plead guilty.”
Under these circumstances, Ushery did not have a right to be present at the August 6, 2013 teleconference. We therefore conclude that the district court did not err in conducting the brief teleconference without Ushery.
C. The district court’s 252-month sentence was substantively reasonable
Finally, Ushery challenges the substantive reasonableness of his 252-month sentence, which is an upward variance of 17 months from the top end of the applicable Sentencing Guidelines range. We review a sentence for substantive reasonableness under the abuse-of-discretion standard. United States v. Zobel, 696 F.3d 558, 569 (6th Cir.2012). The review “take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range.” Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586,169 L.Ed.2d 445 (2007).
Although we may presume that sentences within the Guidelines are reasonable, we cannot presume- that a sentence outside the Guidelines is unreasonable. Zobel, 696 F.3d at 569. For sentences outside the Guidelines range, *224 we “may consider the extent of the deviation, but must give due deference to the district court’s decision that the § 3553(a) factors, on a whole, justify the extent of the variance.” Gall, 552 U.S. at 51, 128 S.Ct. 586. The fact that we might have decided that a different sentence was more appropriate is not enough to justify reversal. Id.
Ushery claims in his brief that the district court abused its discretion by “bas[ing] its upward variance on Ushery’s offense conduct and his prior criminal history” because “[t]hese factors are already taken into account in the Guidelines.” Specifically, Ushery takes issue with the court considering “reckless endangerment during flight, obstruction, threatening the life of an officer, [and] presence of firearms” as aggravating factors when they were already captured by the sentencing enhancements (based on the same factors) that the court found to be applicable in Ushery’s case.
The problem with Ushery’s argument is that these enhancements did not actually affect his Guidelines calculation. Because Ushery was found to be a career offender, his base offense level was determined solely by that fact. The district court stated during the sentencing hearing that it would “rather rule on all of [the objections] to create a complete record,” but “with the caveat that if the Court finds the defendant to be a career offender under Chapter 4, the actual enhancements under Chapter 2 are not applicable as a matter, of law.” There was thus nothing improper about the court considering these aggravating factors.
In a similar vein, Ushery argues that his criminal history, recidivism, and the need for punishment — factors that the district court took into account — were already accounted for by the career-offender enhancement. But Ushery had far more than the two prior felony convictions required to establish career-offender status. See U.S.S.G. § 4Bl.l(a). The district court noted that Ushery’s criminal history “is very significant,” involving “[m]ore than ten juvenile convictions [and] more than 20 adult convictions [that included] trafficking, robbery, escape, history of flight, [and] failure to complete probation.” By taking Ushery’s recidivism and the need for punishment into account, the court, far from abusing its discretion, was simply following § 3553(a)’s mandate that it consider “the need for the sentence imposed ... to provide just punishment for the offense [and] to afford adequate deterrence to criminal conduct.” See 18 U.S.C. § 3553(a)(2)(A)-(B).
In sum, the record reflects that the district court gave reasoned consideration to the relevant sentencing factors. The court justified its upward variance as “necessary to reflect the seriousness of the offense and to provide just punishment as well as protect the public, given the fact that the defendant has been a menace to society practically his entire life.” It explained why it would not vary below the Guidelines, as Ushery requested, because such a sentence “would create a disparity among similarly situated defendants.” The court also considered Ushery’s upbringing, mental-health problems, and the small amount of drugs at issue in the instant offense. These are the same mitigating factors that .Ushery points to in his appellate brief, but he does not argue — because he cannot— that the district court overlooked them. He simply disagrees with the district court’s conclusion. Because that is an insufficient basis to justify reversal on substantive-reasonableness grounds, we conclude that the district court did not abuse its discretion by imposing a sentence of 252 months of imprisonment.
*225 III. CONCLUSION
For all of the reasons set forth above, we AFFIRM the judgment of the district court.